GIRARD TRUST COMPANY, GEORGE STEVENSON, WILLIAM R. VERNER ET AL. *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 137.   Argued January 14, 15, 1926.—Decided March 1, 1926.

1. Where interest on tax refunds is allowed by statute, a suit for the interest after refund of a tax is maintainable in the Court of Claims. *Stewart* v. *Barnes,* 153 U. S. 456, distinguished.   P. 168.
2. Under § 1324 (a) of the Revenue Act of November 23, 1921, which provides that, upon the allowance of a claim for the refund of internal revenue taxes paid, interest shall be allowed and paid upon the total amount of such refund " to the date of such allowance," the date to which the interest runs is neither the date of actual repayment nor the date on which the Commissioner of Internal Revenue first decides that there has been an overassessment and refers the matter to the Collector for examination and report of the amounts to be refunded, but the date on which the Commissioner approves the amount thus ascertained, for payment. P. 169.
3. The above section dates the interest (a) from the time when the tax was paid, if it was paid "under a specific protest setting forth in detail the basis of and reasons for such protest," but (b) from six months after the date of filing claim for refund, if there was no protest or payment pursuant to additional assessment.   *Held,* that, in order to date the interest from time of payment of tax, the protest under which it was paid must set forth a specific and valid reason for a refund.   P. 171.
4. Where a tax payment was less than the amount illegally assessed, due to deduction of the discount allowed on anticipatory payments by § 1009 of the Revenue Act of October 3, 1917, the amount refundable, with interest, was the amount actually paid, not including the discount.   P. 173.

59 Ct. Cls. 727, reversed.

APPEAL from a judgment of the Court of Claims allowing, in part, claims for recovery of interest on the amounts of refunded tax payments.

*Mr. James Craig Peacock,* with whom *Mr. John W. Townsend* was on the brief, for appellants.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* and *Mr. Randolph S. Collins,* Attorney in the Department of Justice, were on the brief, for the United States.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is an appeal from a judgment of the Court of Claims under § 242 of the Judicial Code. The judgment was entered May 19, 1924, and the appeal was allowed July 3, 1924. The judgment dismissed the petition of the plaintiffs upon findings of fact. The Girard Trust Company and the other appellants are trustees of the estate of Alfred F. Moore, deceased.

Their claims are for interest not paid on refunds of taxes paid them. The proposed income tax upon the Moore estate for 1920, as originally returned early in 1921, was $196,202.61. On March 15, 1921, and on June 15, 1921, quarterly payments of the tax, which amounted to $49,050.66 each, were paid to the collector. On August 2, 1921, the trustees for the estate filed a claim for the refund of the two installments aggregating $98,101.32, already paid, and claim for abatement of the two remaining quarterly installments not yet paid, aggregating the same amount. The claim for abatement was allowed in its entirety, and the claim for the refund in large part. The action of the Department began December 9, 1922, in a schedule form, signed by the Commissioner of Internal Revenue, including an item of overassessments and marked, "Approved by the Commissioner of Internal

Revenue, for transmission to the proper accounting offi-
cers for credit and refund." This was transmitted to the
Collector of Internal Revenue for the First District of
Pennsylvania to examine the account of the taxpayer, to
report back the amount to be refunded and the amount
to be credited on taxes due and unpaid. The collector
made the report. The Assistant Commissioner of Inter-
nal Revenue confirmed the report and the Commissioner
directed the refund January 16, 1923. On February 20,
1923, the trustees received by mail a certificate of over-
assessment dated February 10, 1923, stating that since
$196,202.61 was assessed, whereas $13,663.89 was the cor-
rect tax, there had been an overassessment of $182,583.72,
and that the amount of this overassessment had been
applied as follows:

| | |
|---|---|
| Amount abated | $98,101.29 |
| Amount credited | 21.41 |
| Amount refunded | 84,416.02 |

With this certificate was a check for $84,416.02, the
amount of the refund without interest. Since filing the
petition in this case the trustees received, under date of
October 5, 1923, a check for $4,318.97, interest on the
refund and the credit of $21.41, from six months after the
filing of the claim for refund to December 9, 1922.

Moore's estate made return to the Collector of Internal
Revenue for excess profits tax for the year 1917 of
$108,140.15, and on March 21, 1918, paid to the Collector
of Internal Revenue $107,372.36, the amount of the tax
less the credit of $767.79 allowed for payment in advance
of the time fixed by law, June 15, 1918. Ascertaining
that the trustees of a trust estate were not subject to
excess profits tax, on August 2, 1921, they filed a claim
for refund of the entire tax of $108,140.15. This claim
was approved by the Commissioner of Internal Revenue
for $107,372.36, on December 9, 1922, under the pre-
scribed schedule form in which this item was marked

"Approved by the Commissioner of Internal Revenue, for transmission to the proper accounting officer for credit and refund." It was sent to the proper Collector of Internal Revenue who reported it back to .the Bureau. It was approved by the Assistant Commissioner and the refund was finally approved by the Commissioner, January 16, 1923. On February 7, 1923, the plaintiffs received by mail a certificate of overassessment dated February 6, 1923, for $107,372.36, together with a check for $112,864.53, the difference $5,492.17 being interest on the amount refunded from the date six months after the filing of the claim to December 9, 1922.

The contentions of the trustees are that the allowances of interest on the refunds are not sufficient under the statute. Section 250(b) of the Revenue Act of November 23, 1921, 42 Stat. 227, 264, c. 136, provides:

"As soon as practicable after the return is filed, the Commissioner shall examine it. If it then appears that the correct amount of the tax is greater or less than that shown in the return, the installments shall be recomputed. If the amount already paid exceeds that which should have been paid on the basis of the installments as recomputed, the excess so paid shall be credited against the subsequent installments; and if the amount already paid exceeds the correct amount of the tax, the excess shall be credited or refunded to the taxpayer in accordance with the provisions of section 252."

Section 252 of the above Act, 42 Stat. 268, provides:

"That if, upon examination of any return . . , it appears that an amount of income, war-profits or excess-profits tax has been paid in excess of that properly due, then, notwithstanding the provisions of section 3228 of the Revised Statutes, the amount of the excess shall be credited against any income, war-profits or excess-profits taxes, or installment thereof, then due from the taxpayer under any other return, and any balance of such excess shall be immediately refunded to the taxpayer. . . ."

Section 1324 (a) of the same statute, 42 Stat. 316, contains the provision as to interest as follows:

" That upon the allowance of a claim for the refund of or credit for internal revenue taxes paid, interest shall be allowed and paid upon the total amount of such refund or credit at the rate of one-half of 1 per centum per month to the date of such allowance, as follows:  (1)  If such amount was paid under a specific protest setting forth in detail the basis of and reasons for such protest, from the time when such tax was paid, or (2) if such amount was not paid under protest but pursuant to an additional assessment, from the time such additional assessment was paid, or (3) if no protest was made and the tax was not paid pursuant to an additional assessment, from six months after the date of filing of such claim for refund or credit.  The term 'additional assessment' as used in this section means a further assessment for a tax of the same character previously paid in part."

The claims made by the trustees, appellants here, are, first, that the Government erred in its construction of § 1324, by which it allowed interest, not to the dates of payments of the refunds February 20 and February 7, 1923, but only to the date when the Commissioner approved the schedule finding the amount of the overassessments and transmitted the schedule to the accounting officers December 9, 1922.  The interest between December 9, 1922, down to the dates of payment amounts to $2,028.11.  The question is whether the words "to the date of the allowance" mean to the date of the decision of the Commissioner that an overassessment has been made, i. e., to December 9, 1922, to the final approval of the refund by the Commissioner January 16, 1923, or to the date of payment.

The next claim of the trustees is for $3,889.67, and this turns on the question whether under § 1324 the interest on the refund for the 1920 taxes should be calculated

under clause (1) in that section as for a payment made under a specific protest or whether as upon a payment under clause (3) for which no protest was made. The Commissioner held that no sufficient protest had been made and therefore allowed interest, not from the time of payment as provided under clause (1), but from six months after the filing of the claim for refund under clause (3), which made a difference of $3,889.67.

The third claim of the trustees is for $767.79. This is based on the fact that under the Revenue Act of October 3, 1917, 40 Stat. 300, 326, c. 63, § 1009, a credit on taxes to be paid in advance, calculated at the rate of 3 per cent. per annum upon the amount so paid from the date of payment to the date fixed by law for payment, was allowed and the amount paid was $767.79 less than the amount assessed. The claim for refund was allowed for the amount actually paid, but not for the discount. The trustees now seek to recover the discount.

The Court of Claims dismissed the petition for all these claims on the authority of *Stewart* v. *Barnes*, 153 U. S. 456. The taxpayer in that case had already received and accepted the principal of the amount improperly collected by a collector of internal revenue, and this was an action for the interest. This Court held that the taxpayer could not maintain an independent action for interest, for the reason that in such cases interest is considered as damages, does not form the basis of the action, and is only an incident to the recovery of the principal debt. We do not think that it controls this case. The payment of interest in the *Stewart Case* was not expressly provided for in the Act. In this case there is statutory provision for it, and it is analogous to a suit in debt or covenant in which the contract specifically provides for payment of interest on the principal debt. In such cases the authorities all hold that the acceptance of the payment of the principal debt does not preclude a further suit for the interest unpaid.

*Fake* v. *Eddy,* 15 Wend. (N. Y.) 76; *Kimball* v. *Williams,* 36 App. D. C. 43; *New York Trust Company* v. *Detroit Railway Company,* 251 Fed. 514; *King* v. *Phillips,* 95 N. C. 245; *Bennett* v. *Federal Coal & Coke Company,* 70 W. Va. 456; *Robbins* v. *Cheek,* 32 Ind. 328. And the same rule obtains where the obligation is one that by statute bears interest. *National Bank* v. *Mechanic's Bank,* 94 U. S. 437; *Hobbs* v. *United States,* 19 Ct. Cls. 220; *New York* v. *United States,* 31 Ct. Cls. 276; *Crane* v. *Craig,* 230 N. Y. 452; *Bowen* v. *Minneapolis,* 47 Minn. 115; *Blair* v. *United States ex rel. Birkenstock,* 6 Fed. (2d) 679.

We are therefore brought to the merits of the case. First, what is the meaning in § 1324 of the words "to the date of such allowance" to which interest is to be paid on refunds. The Treasury Department by its regulations of 1922 construed this provision as follows:

"A claim for refund or credit is allowed within the meaning of the statute when the Commissioner approves the schedule in whole or in part, for transmission to the proper accounting officer, for credit or refund."

And this is the holding of the Comptroller General, 1 Decisions Compt. Gen. 411, 412. He says:

"To compute interest to the date of actual payment would be wholly impracticable from an administrative standpoint, and I have no doubt that this phase of the matter was considered by the Congress in providing that the interest should be allowed to the date of allowance rather than to the date of payment of the claim."

If Congress had intended that interest should be allowed to the date of the payment, it seems to us it would have said so. Allowance in its ordinary sense does not mean payment, and in the practical administration of the Treasury Department the two things are quite different. The one is a decision by the competent authority that the payment should be made. The other is the actual pay-

ment. The Commissioner of Internal Revenue is the final judge in the administrative branch of the Government to decide that an overassessment has been made and that a refund or credit should be granted, and when he has made that decision finally, he has allowed the claim for the refund or credit of the taxes paid within the meaning of the section.

It is said that this is a remedial statute and was intended to require the Government to recoup the taxpayer unjustly dealt with by paying interest during the whole time the money was detained. That was doubtless its general purpose. But the statute is to be construed in the light of the difficulties of the Government bookkeeping and accounting. To have made the interest calculable to the date of actual payment would have led to uncertainty and confusion, as the Comptroller General indicates, and it was doubtless for that reason that Congress qualified its desire to pay interest for the exact time during which the money was detained to a date which was practical from an administrative standpoint. Nor does the fact that, pending the carrying out of the direction of the Commissioner of Internal Revenue to make the refund, he might reverse himself, change the finality of his decision allowing the refund. If he does so, the date fixed as the date of the allowance under the section is changed of course, but the mere fact that he can reverse a final allowance does not prevent its being a final allowance, any more than when a court renders a judgment, its ability within the term to set it aside or change it affects its finality, if it is not changed. We think, therefore, that the words "to the date of such allowance" do not carry interest to be paid on refunds down to the time of payment.

We can not concur, however, in the view of the Treasury Department that the date of the allowance of the claim as intended by the statute is the date when the Commissioner first decides that there has been an over-

assessment and sends upon a proper form his decision to the Collector of Internal Revenue, who made the collection and keeps the account with the taxpayer. The findings and the exhibits show that the course of business is that the Collector on receiving from the Commissioner the schedule as to the overassessment, examines his books and reports back to the Bureau the amount which should be credited on taxes due and the amount to be refunded, that this is examined by the Assistant Commissioner and then is delivered to the Commissioner, who makes it effective by his approval. Until it reaches him and is approved by him, the refund can not be paid. This we think is the real date of allowance. Until that time, the exact amount of the refund is not fixed finally by competent authority. This date would seem to be just as certain and convenient from an administrative standpoint as that of the original decision of the Commissioner, and it is certainly more in conformity to the general purpose of Congress to relieve the overassessed taxpayer by paying compensatory interest on money unjustly taken and kept by the Government. We think, therefore, that the trustees are entitled to recover from the Government, interest on both the refund for the taxes of 1917 and that for those of 1920 from December 9, 1922 to January 16, 1923.

Second. This second claim turns on the provisos of § 1324 with reference to protests. The trustees attached to their original return of income tax for 1920 the following protest:

" Note.—Profit was made during the year 1920 upon sales of capital assets as set forth in block C above. This amount of $349,200.85 is included in the total net income and under regulations is returned for tax on Form 1040. As the taxpayer is advised that such sum is not taxable income, under the decision of Brewster *v.* Walsh—District Court for District of Connecticut made December 16, 1920—the report of the amount of such profit is made and

tax paid thereon. only under protest, and only in compliance with the requirement of the foregoing form and the instructions thereon."

Both the installments of the income tax paid March 15 and June 15 were paid under this protest. On the 15th of June, however, there was added to the protest the following memorandum:

" In view of the joint investigation by accountants of both Government and trustees now in progress, with the agreed object of correcting certain figures, especially those relating to depreciation, believed to have been erroneously increased, as to the most important item and ignored as to another item, in the 1920 return of said trustees covering the sale of the three capital assets in that return set forth, estimating the total of said profits and the tax payable thereon out of the trust estate.

" Inasmuch as the second quarterly installment of $49,-050.60 based upon said estimate, is now due, you are hereby notified that the accompanying payment thereof is made without prejudice to the right of said trust estate to be hereafter relieved from or reimbursed for the payment of any tax upon the profits so returned in excess of the total tax, resulting from such final adjustment thereof as may be determined, either by agreement, or by the courts. . . ."

The Government's contention is that the distinction made in § 1324, by which the interest to be paid on refunded taxes is to date from the payment of the taxes in cases where there is a specific protest setting forth in detail the basis and reasons for such protest, and by which the interest is to be dated only from six months after the date of filing the claim for refund or credit when there is no protest, was intended to favor those who furnished to the collecting officers by way of specific protest a valid basis for a refund of the taxes.

We agree with this view. To hold otherwise would be to invite a protest on any pretended ground by tax-

payers in every case of payment and would make the protest of no value to the Treasury or the collecting officers. A protest is for the purpose of inviting attention of the taxing officers to the illegality of the collection, so that they may take remedial measures at once. But if protests are based on reasons of no validity, they do not accomplish the public purpose for which they are devised.

In the present case, the protest was based on a decision of the District Court of Connecticut made December 16, 1920. *Brewster* v. *Walsh,* 268 Fed. 207. That case was reversed in *Walsh* v. *Brewster,* 255 U. S. 536, March 28, 1921, or more than two months before the payment of the June 15 installment by the trustees. The statement added under the June 15 installment was merely a recital that an investigation was going on between the Government and the trustees, and that if that turned out to be in excess of the right amount, the payment was without prejudice to the recovery of the excess. This was certainly not a protest for specific reasons in accordance with the requirement of the statute. For these reasons, we think that no recovery can be had for failure to allow interest for the period of the six months after the date of payment.

Third. The third item of the recovery here sought is for the $767 of discount allowed by the Government upon the amount returned for taxation on the income for 1917 by the trustees on the excess profits tax. The tax assessed was $108,140.15. It was not due until June 15, 1918. Under § 1009 of the Revenue Act of October 3, 1917, 40 Stat. 300, c. 63, it was provided that the Secretary of the Treasury, under rules and regulations prescribed by him, should permit taxpayers liable to income and excess-profits taxes to make payments in advance in installments or in whole of an amount not in excess of the estimated taxes which would be due from them, provided that the Secretary of the Treasury, under rules and regulations prescribed by him, might allow credit against such taxes so

paid in advance of an amount not exceeding three per centum per annum calculated upon the amount so paid from the date of such payment to the date fixed by law for such payment; but that no such credit should be allowed on payments in excess of taxes determined to be due.

We do not see the basis upon which such recovery can be had. The taxpayer can not obtain a refund under the other sections quoted except for taxes paid. By reason of his payment earlier than required, he has been permitted to reduce the amount which he actually paid. But there is no provision in the statute for a recovery of anything but what he did pay, or for interest on anything but on what he did pay. We think that if Congress intended him to recover interest for his accommodation of the Government by a premature payment of his taxes illegally collected, it would have made a specific provision for it and have given the Commissioner special authority.

This disposes of the three claims. The conclusion of the Court of Claims is therefore affirmed in all respects except as to the interest on the refunds on the taxes illegally collected for the year 1917, and for the year 1920 for the period from the 9th of December, 1922, to January 16, 1923, which the trustees should recover.

The judgment is therefore reversed and the cause is remanded to the Court of Claims with directions to enter a judgment in accordance with this opinion.

*Reversed.*