## PENN SMOKELESS COAL CO. v. UNITED STATES.

District Court, W. D. Pennsylvania. January 3, 1929.

No. 5668.

See, also, 26 F.(2d) 743.

Smith, Shaw & McClay, William A. Seifert, and William Wallace Booth, all of Pittsburgh, Pa., for plaintiff.

John D. Meyer, U. S. Atty., and William J. Aiken, Asst. U. S. Atty., and John A. McCann, Special Asst. Atty., all of Pittsburgh, Pa., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Ralph E. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C.

GIBSON, District Judge. The case at bar is a suit brought under that part of the jurisdiction of this court which is concurrent with that of the Court of Claims.

### Findings of Fact.

(1) Penn Smokeless Coal Company, the plaintiff, is a Pennsylvania corporation, with its principal office and place of business in the city of Pittsburgh, Pa.

(2) At the times appointed by law, plaintiff filed with the collector of internal revenue at Pittsburgh, Pa., its income and excess profits tax returns for the fiscal year 1918, and paid to the said collector the sum of $91,809.69, the amount of such taxes appearing by such returns to be owing to the defendant.

(3) Thereafter, and on or about the following dates, the Commissioner of Internal Revenue assessed against the plaintiff additional income and excess profits taxes for said fiscal year, as follows:

| | |
|---|---|
| June 14, 1919 | $14,454 43 |
| August 1, 1919 | 4,581 30 |
| May 1, 1924 | 636 80 |

(4) On demand, plaintiff duly paid said additional tax of $19,035.73 to said collector of internal revenue. Said additional tax of $636.80 was abated by the collector of internal revenue on January 28, 1926, pursuant to order of the Commissioner of Internal Revenue.

(5) A true and correct amount of income and excess profits tax due by plaintiff for said fiscal year was $103,528.12, and not the sum of $111,482.22, which the Commissioner of Internal Revenue assessed against the plaintiff on said original return and by way of additional taxes as aforesaid; wherefore said Commissioner of Internal Revenue overassessed the plaintiff to the extent of $7,954.-10. On demand, the plaintiff duly paid to the collector of internal revenue at Pittsburgh, Pa., all of said erroneous and illegal additional tax, except the sum of $636.80, said payments being made on October 27, 1919, in the sum of $3,703.67, and on December 15, 1919, in the sum of $3,613.63.

(6) After making said excessive and erroneous payments and within the statutory period of limitation prescribed for filing claims for refund of internal revenue taxes erroneously or illegally assessed or collected, the plaintiff duly filed with the Commissioner of Internal Revenue, on the forms prescribed by him for that purpose, an original and also a supplemental claim for refund of said overpayments, setting forth therein the facts and provisions of law upon which the plaintiff relied to establish that said additional taxes and the assessment and collection thereof were erroneous, illegal, and void.

(7) By letter dated December 17, 1925,

the Commissioner of Internal Revenue notified plaintiff that it had been overassessed for said fiscal year ended March 31, 1918, in the sum of $7,954.10. Thereafter the Commissioner of Internal Revenue executed a certificate of overassessment in said sum, which certificate was received by plaintiff on or about March 13, 1926.

(8) On June 21, 1924, the Commissioner of Internal Revenue assessed against the plaintiff additional income and excess profits taxes for the fiscal year ended March 31, 1919, in a sum in excess of plaintiff's said overpayment of $7,317.30 for the fiscal year ended March 31, 1918.

(9) After said notice to plaintiff, of December 17, 1925, to wit, on January 13, 1926, the Commissioner of Internal Revenue signed and transmitted to the collector of internal revenue aforesaid a certain "Schedule of Overassessments and Allowance of Abatements, Credits, Refunds, and Related Claims, if any," wherein said Commissioner certified, in substance and effect, that the plaintiff had been overassessed for the fiscal year ended March 31, 1918, in the sum of $7,954.10. In and by said schedule of overassessments the Commissioner of Internal Revenue gave directions to the collector of internal revenue, among others, as follows:

"You will immediately check such items against the accounts of the several taxpayers, and determine whether the amounts in which the tax liabilities have been reduced should be respectively abated, in whole or in part, and make such abatements as may be warranted by the condition of the taxpayers' accounts for the years involved.

"If any part of any such item is found to be an overpayment, you will examine all accounts of the taxpayer for other periods and apply the overpayment as a credit against the taxes due, if any, making the appropriate entries in your accounts. * * * Such credits will be entered in column 9 and placed in column 5 of a subsidiary Schedule of Refunds and Credits (Form 7805-A)."

Pursuant to said schedule of overassessments, the collector of internal revenue abated said unpaid additional tax of $636.80, and applied the balance of the overassessment, to wit, the sum of $7,317.30, upon said additional taxes for the fiscal year ended March 31, 1919; but neither upon the allowance of said credit nor upon said application of the amount thereof, nor at any other time, has any interest whatsoever been paid, given, or allowed to plaintiff by reason of, or on account of, said overpayment.

(10) On or about October 19, 1926, plaintiff filed with the Commissioner of Internal Revenue, on the form prescribed by him for that purpose, claim for refund of interest on said overpayment from the dates of payment thereof to the date of the allowance of the credit, which said claim was wholly rejected by the Commissioner of Internal Revenue on or about January 19, 1927. The defendant has never paid, credited, or allowed the plaintiff any interest upon its payments of $3,703.67 and $3,613.63 made respectively on October 27, 1919, and December 15, 1919, pursuant to said overassessment of taxes for the year ended March 31, 1918, and has refused to pay any such interest.

(11) The collector of internal revenue, on or about January 28, 1926, certified and transmitted to the Commissioner of Internal Revenue, a certain schedule of refunds and credits wherein it was set forth that said collector had credited the sum of $7,317.30, overpayments by the plaintiff pursuant to overassessment of its taxes for the fiscal year ended March 31, 1918, to an additional assessment of taxes against the plaintiff for the fiscal year ended March 31, 1919, which said assessment had been made June 24, 1924. On this same schedule of refunds and credits appeared the names of other taxpayers whose names had appeared upon the schedule of overassessments with the plaintiff, who were certified as being entitled to the respective amounts of refunds set opposite their names. This schedule of refunds and credits was signed by the Commissioner of Internal Revenue on March 11, 1928, under the following authorization:

"Authorization of Commissioner

"To the Disbursing Clerk, Treasury Department:

"The items listed in column 4 hereof have been found to be the refundable portions of overassessments heretofore allowed, and the accrued interest, if any, listed in column 6 has been found due. Payment may, therefore, be made in the amounts shown in column 7.

"Date ———.

"———————, Commissioner of Internal Revenue."

(12) The plaintiff has at all times borne true allegiance to the government of the United States, and has not in any way aided, abetted, or given encouragement to rebellion against said government. It is the sole and absolute owner of the claim herein presented. It has made no transfer or assignment of said claim or any part thereof, and is justly entitled to the amount claimed herein from the

United States, after allowing all just credits and set-offs.

## Opinion.

No contention exists between the parties herein as to the tangible facts. The dispute is wholly in respect to the results legally following such facts. The plaintiff claims that it is entitled, under section 1019 of the Revenue Act of 1924 (26 USCA §. 153 note), to recover interest from the dates of its overpayments of its taxes for the fiscal year ended March 31, 1918, to the date when such additional taxes were assessed by the Commissioner of Internal Revenue. The defendant contends that plaintiff's claim for interest upon its overpayments is ruled by section 1116 of the Revenue Act of 1926 (26 USCA § 153 note) not by section 1019 of the Act of 1924, and that such section defeats the claim, because the overpayments were made subsequent to the due date of the tax additionally assessed for the year 1919, against which plaintiff's overpayments were credited.

Plaintiff, while denying the applicability of the act of 1926 to its claim, contends that even under that act it is entitled to the interest demanded. This contention is based upon the theory that the due date of the additional assessment for 1919 was the date when the additional assessment was made, not the date when the original return of taxes for that year was due. The court, however, feels that it cannot accept and adopt this theory. Congress, in enacting section 1116 (a) of the act of 1926, substantially adopted the language of section 1019 of the Act of 1924, but varied from it for the express purpose of denying interest for the period between the date of the original return and the date of an additional assessment for taxes for years prior to 1921, in which year Congress first made additional assessments upon the taxpayer subject to interest. Prior to the act of 1921 (42 Stat. 227), a taxpayer might withhold tax due the United States without being required to pay interest upon it to the date of assessment, while the United States was required to pay interest from the time of an improper collection of tax to the date of the additional assessment. In other words, a taxpayer prior to the act of 1926 might collect interest upon money owed him by the government, while he was paying no interest upon money which he then owed the government. A reading of section 1116(a) of the act of 1926, in the light of previous statutes, controverts plaintiff's contention in respect to the effect of the act of 1926. The effect of this conclusion is to confine the controversy in the instant case to a determination of the statutes in force at the time of the allowance of the credit for the overpayments of the tax. The statute in effect at the time of the allowance of the refund or credit governs the period for which interest is payable. Blair v. Birkenstock, 271 U. S. 348, 46 S. Ct. 506, 70 L. Ed. 983.

The Revenue Act of 1924 became effective on June 2, 1924. Section 1019 of that act is as follows:

"Sec. 1019. Upon the allowance of a credit or refund of any internal-revenue tax erroneously or illegally assessed or collected, or of any penalty collected without authority, or of any sum which was excessive or in any manner wrongfully collected, interest shall be allowed and paid on the amount of such credit or refund at the rate of 6 per centum per annum 'from the date such tax, penalty, or sum was paid to the date of the allowance of the refund, or in case of a credit, to the due date of the amount against which the credit is taken, but if the amount against which the credit is taken is an additional assessment, then to the date of the assessment of that amount. The term 'additional assessment' as used in this section means a further assessment for a tax of the same character previously paid in part."

The Revenue Act of 1926 was effective on February 26, 1926. Section 1116 follows:

"Sec. 1116(a) Upon the allowance of a credit or refund of any internal-revenue tax erroneously or illegally assessed or collected, or of any penalty collected without authority, or of any sum which was excessive or in any manner wrongfully collected, interest shall be allowed and paid on the amount of such credit or refund at the rate of 6 per centum per annum from the date such tax, penalty, or sum was paid to the date of the allowance of the refund, or in the case of a credit, to the due date of the amount against which the credit is taken, but if the amount against which the credit is taken is an additional assessment made under the Revenue Act of 1921, the Revenue Act of 1924, or this Act, then to the date of the assessment of that amount.

"(b) As used in this section—

"(1) The term 'additional assessment' means a further assessment for a tax of the same character previously paid in part, and includes the assessment of a deficiency under Title II or Title III of the Revenue Act of 1924 or of this Act;

"(2) The term 'date of the allowance of the refund' means, in the case of any income,

war-profits, or excess-profits tax, the first date on which the Commissioner signs the schedule of overassessments in respect thereof.

"(c) This section shall be applicable to any refund paid, and to any credit taken, on or after the date of the enactment of this Act, even though such refund or credit was allowed prior to such date."

Which of the quoted statutes is applicable to plaintiff's claim must be determined by the date when the allowance of the credit to plaintiff by the Commissioner became effective. If the effective date was March 11, 1926, as claimed by defendant, then the act of 1926 governs, and the claim is invalid, because the due date of the 1919 tax against which the credit was applied was prior to the dates of the overpayments; and, if the credit allowance was effective on January 13, 1926, when the Commissioner signed and transmitted the certificate of overassessment to the collector of internal revenue, or on January 28, 1926, when the collector credited the overassessment against an additional assessment upon plaintiff for the year 1919, as claimed by the plaintiff, then the act of 1924 governs, and the claim is valid, as that act provides for the payment of interest from the date of overpayment to the date of the additional assessment, which in the instant case was June 21, 1924.

In a consideration of the date when the credit allowance took effect, the procedure in the Bureau of Internal Revenue must be kept in mind. On January 13, 1926, the Commissioner signed and transmitted to the collector a certain "Schedule of Overassessments and Allowance of Abatements, Credits, Refunds, and Related Claims, if any." In that schedule was included the overassessment against the plaintiff. Under the heading "Authorization of Commissioner," the Commissioner directed the collector, inter alia, as follows:

"You will immediately check such items against the accounts of the several taxpayers, and determine whether the amounts in which the tax liabilities have been reduced should be respectively abated, in whole or in part, and make such abatements as may be warranted by the condition of the taxpayers' accounts for the years involved."

"If any part of any such item is found to be an overpayment, you will examine all accounts of the taxpayer for other periods and apply the overpayment as a credit against the taxes due, if any, making the appropriate entries in your accounts. (This applies only to income, war-profits, and excess-profits taxes.) Such credits will be entered in Column 9, and placed in Column 5 of a subsidiary Schedule of Refunds and Credits (Form 7805-A)."

Pursuant to the direction of the Commissioner, the schedule of overassessments was checked by the collector, who returned to the Commissioner on January 28, 1926, a "Schedule of Refunds and Credits," showing the result of his check of the schedule of overassessments, in which he certified that the overassessment of the plaintiff had been credited to additional assessment dated "6/24/24." This "Schedule of Refunds and Credits," under the heading "authorization of Commissioner" directed to the disbursing clerk, Treasury Department, was signed by the Commissioner on March 11, 1926. The authorization to the disbursing clerk informed him that payment might be made of the amounts of the refunds shown upon the schedule. No order was made concerning the credits to taxpayers, and the schedule shows the overpayments, as credited, not to be credited. The overassessments in question had been credited to the plaintiff upon the accounts of the collector under date of January 28, 1926.

A case somewhat similar to the instant case in point of facts has been before the Supreme Court. See Girard Trust Co. v. United States, 270 U. S. 163, 46 S. Ct. 229, 70 L. Ed. 524. In that case, however, the matter under consideration was the date of the allowance of a refund, while in the present case we are dealing with a credit. In Girard Trust Co. v. United States it was held that the refund had not been allowed prior to the date when the schedule of refunds was signed by the Commissioner, after return upon the original schedule of overassessments on the part of the collector. It will be remembered that the signature of the Commissioner upon the schedule of refunds was over a direction to the disbursing clerk of the Treasury Department to pay the amount of the refunds appearing on the schedule. It is clear from the case last cited that a refund, prior to section 1116(b)(2) of the act of 1926 becoming effective, was not allowed until the disbursing clerk had been directed to pay it; but the status of a credit is not, as we think, the same as that of a refund. In Girard Trust Co. v. United States, supra, the court, in the opinion by Mr. Chief Justice Taft, laid down a rule as follows:

"A claim for refund or credit is allowed within the meaning of the statute when the Commissioner approves the schedule in whole

or in part, for transmission to the proper accounting officer, for credit or refund."

When the Commissioner signs and transmits to the collector the schedule of overassessments, he formally allows overassessments, to the respective amounts indicated, in favor of the taxpayers named in the schedule. The schedule is transmitted to the collector in order that he may allocate each overassessment in accordance with the regulations of the Bureau of Internal Revenue, by abating, crediting, or certifying as a refund the amount indicated, as the circumstances may require. The result of the collector's investigation of, and entries upon, the taxpayer's account, is reported to the Commissioner upon the schedule of refunds and credits; but the only order thereafter made by the latter is in connection with the refund. The order for abatement or credit has theretofore been made upon the proper accounting officer, the collector, by means of the schedule of overassessment. True, something remained to be done by the collector before the allowance of credit was fully effected, but so also something remained to be done by the disbursing clerk before the order for refund was fully effected. The order upon the collector for the credit, made in the schedule of overassessments, is just as effective in allowance of the credit as the order upon the disbursing clerk for the payment of the refund from the Treasury; and, prior to the order for the refund, the credit in the instant case had been actually effected. The credit to the taxpayer in his account in the collector's office, and as reported to the Commissioner, is dated January 28, 1926. Applying the rule laid down in Girard Trust Co. v. United States to the actual procedure in the Bureau of Internal Revenue, the credit to the plaintiff was allowed when the Commissioner approved the schedule of overassessments on January 13, 1926, for transmission to the collector, and thus directed the latter to credit plaintiff with the amount of its overpayments of 1918 taxes against other taxes owed by it. The allowance of the credit having been made prior to the date when the Revenue Act of 1926 became effective, the act of 1924 governs the period for which interest is payable. Under that act, plaintiff is entitled to interest, at the rate of 6 per cent. per annum, upon an overpayment of $3,703.67 from October 27, 1919, to June 21, 1924, when the additional assessment of 1919 tax was made, and upon $3,613.63 from December 15, 1919, to the said date of additional assessment. The total amount of the interest due was $2,014.44, and upon this sum improperly

withheld from plaintiff interest is due from June 21, 1924.

An order for judgment will be entered in accordance with this opinion.