### UNITED STATES v. BOSTON BUICK CO.

### SAME v. IRON CAP COPPER. CO.

Circuit Court of Appeals, First Circuit.
November 5, 1929.

Nos. 2344, 2377.

Ralph E. Smith and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, both of Washington, D. C. (Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. to the U. S. Atty., both of Boston, Mass., on the brief), for the United States.

Charles W. Mulcahy, of Boston, Mass., for Boston Buick Co.

Burton E. Eames, of Boston, Mass. (Tyler, Eames, Wright & Hooper, of Boston, Mass., on the brief), for Iron Cap Copper Co.

G. Carroll Todd, of Washington, D. C., amicus curiæ.

Before ANDERSON and WILSON, Circuit Judges, and HALE, District Judge.

WILSON, Circuit Judge. These two cases are before this court on appeal by the United States from decisions of the District Court of Massachusetts. As the same question is involved in both cases and they were argued together, one opinion will suffice to dispose of them.

The material facts in the Iron Cap Copper Company creating the issue here raised are as follows:

An examination and audit of the tax returns of the appellee for the year 1918 disclosed that the appellee had been overassessed in that year to the amount of $180,322.66. On March 29, 1924, the Commissioner approved a Schedule of Overassessments containing a list of taxpayers who had been overassessed for the year 1918, in which was included the overassessment of the appellee in the above amount.

The schedule was made out on a form then in use in the department, and known as Form 7805, which was forwarded to the collector of internal revenue at Boston, with the following general instructions which were printed thereon:

"You will immediately check such items against the accounts of the several taxpayers and determine whether the amounts in which the tax liabilities have been reduced should be respectively abated in whole or in part, and make such abatements as may be warranted by the condition of the taxpayers' accounts for the years involved.

"If any part of any such item is found to be an overpayment, you will examine all accounts of the taxpayer for other periods and apply the overpayment as a credit against taxes due, if any,"

—and with further instructions to enter such credits and any balance in appropriate columns of the Schedule of Overassessments and in a subsidiary schedule then in use and designated as Form 7805A, and return both forms to the Commissioner's office.

After the collector had conformed to these instructions, it was found that the status of the taxpayer's account required an abatement to the amount of $48,539.94, and that there had been an overpayment by the appellee of $131,782.72. He therefore credited against taxes previously assessed against the taxpayer and unpaid, the sum of $102,931.89, which left a balance to be refunded to the taxpayer of $28,850.83. In accordance with above directions of the Commissioner, he so reported to the Commissioner on July 14, 1924, on Form 7805A, and on August 7, 1924, the Deputy Commissioner reported to the Commissioner that the amount reported by

the collector as refundable had been found correct, and, together with the accrued interest set forth in the subsidiary schedule on Form 7805A, was due the taxpayer. Whereupon the Commissioner authorized the disbursing clerk in the Treasury Department to pay the refundable amount to the plaintiff.

In the Boston Buick Company case the material facts are as follows:

On the 14th day of March, 1924, the Commissioner on Form 7805 certified to the collector at Boston that the plaintiff had been overassessed for the year 1918 to the amount of $23,881.08. The collector, following the general directions contained in Form 7805, reported back July 11, 1924, that there had been an overpayment by this taxpayer equalling the total amount of the overassessment, which he credited on other taxes due from the taxpayer. On July 31st the Deputy Commissioner and the Commissioner signed the usual blanks contained in Form 7805A, directing the payment of any sum disclosed by the reports of the collector as refundable.

Interest in the Iron Cap Copper Company case was allowed and paid on the amount refunded in accordance with the decision of the Supreme Court in the case of Girard Trust Co. v. United States, 270 U. S. 163, 46 S. Ct. 229, 232, 70 L. Ed. 524, but no interest was allowed on the sums credited on other taxes due from the taxpayer, either in the Iron Cap Copper Company or the Boston Buick Company. These actions are respectively brought to recover interest on the credits which the plaintiffs say should be computed under section 1019 of the Revenue Act of 1924 (26 USCA § 153 note), the relevant part of which reads as follows:

Section 1019. "Upon the allowance of a credit or refund of any internal-revenue tax erroneously or illegally assessed or collected, * * * interest shall be allowed and paid on the amount of such credit or refund at the rate of 6 per centum," etc.

The issue in both cases is whether the credits were allowed when the Commissioner on March 14 and on March 29, 1924, certified to the collector on Form 7805 that there had been an overassessment, and directed him to determine what, if any, part of the taxpayer's assessment should be abated, and, if there was an overpayment, what, if any, part should be credited to other payments due from the taxpayer; or whether the credits were allowed when the collector made his report of the status of the taxpayer's account and the abatements and credits allowed by him, and the Commissioner, expressly or impliedly, approved his report.

The date of the allowance of the credits is the crux of both cases, since if the allowance of the credits within the meaning of the Revenue Acts was made when the Commissioner certified to the collector the amount of the overassessments on March 14 and March 29, 1924, interest on credits must be computed under section 1324 of the Revenue Act of 1921 (42 Stat. 316), under which it is agreed by the taxpayer that no further interest should be allowed; but, if the credits were not allowed until the collector had examined his accounts and determined the amount of the overpayment, if any, and the amounts then due from the taxpayer for other periods, which it is agreed was on July 11, 1924, in the Boston Buick case, and on July 14th in the Iron Cap Copper Company case, or until he had made his report to the Commissioner, and it had expressly or impliedly received his approval on July 31, 1924, in the Boston Buick Company case, and on August 7th in the Copper Company case, then it is admitted by the government that, under the decisions of the Supreme Court, Blair v. United States ex rel. Birkenstock et al., 271 U. S. 348, 46 S. Ct. 506, 70 L. Ed. 983; United States v. Magnolia Petroleum Co., 276 U. S. 160, 48 S. Ct. 236, 72 L. Ed. 509, interest should be computed under section 1019 of the Revenue Act of 1924 (26 USCA § 153 note), which became effective June 2, 1924, and that under section 1019 there would be due the plaintiff Iron Cap Copper Company, as interest, the sum of $11,592.18, and to the Boston Buick Company the sum of $6,675.83.

The court below found for the plaintiff in each case, and in the above amounts. This court is of the opinion that the contention of the plaintiffs must be sustained and the appeals dismissed.

Prior to the Revenue Act of 1926 (44 Stat. 9) there is nothing on which to base the contention of the government that the allowance of an overassessment is an allowance of credits, except a regulation of the Treasury Department and its persistent practice in so holding.

The Commissioner, who is the final arbiter in such matters, when he determines that there has been an overassessment, has no knowledge of what the status of any taxpayer's account is, whether it will disclose that there has been an overpayment, and, if so, whether there will be any sums due from the taxpayer for other periods to which the overpayments should be credited, or whether the overpayment must all be refunded. While Form 7805, containing the Schedule of Overassessments, contains a direction to the collector, if any overpayment is found, to apply first to other taxes which may be then due from the taxpayer for other periods, and enter any balance in appropriate columns in Forms 7805 and 7805A as refundable, yet the action of the collector is not final.

The Supreme Court in Girard Trust Co. v. United States, speaking through its Chief Justice, said:

"The Commissioner of Internal Revenue is the final judge in the administrative branch of the government to decide that an overassessment has been made and that a refund or credit should be granted, and when he has made that decision finally, he has allowed the claim for the refund or credit of the taxes paid within the meaning of the section."

Again:

"The findings and the exhibits show that the course of business is that the collector on receiving from the Commissioner the schedule as to the overassessment, examines his books and reports back to the bureau the amount which should be credited on taxes due and the amount to be refunded, that this is examined by the Assistant Commissioner and then is delivered to the Commissioner, who makes it effective by his approval."

While it is true that the issue involved in the Girard Trust Co. Case related only to the date of the allowance of a refund, the court, though by way of dictum, as it may be argued, also as definitely fixed the time of the allowance of credits. Its dictum as to the time of allowance of credits was, we think, an inevitable conclusion from its finding as to the time of allowance of a refund; since the amount to be refunded is absolutely determined when the credits are allowed. It is no answer to say that the directions in Form 7805 are authority to the collector to apply any overpayment on any unpaid taxes for other periods, and is therefore an allowance of such credits as the collector may see fit to make. It would be a strained construction of the Commissioner's directions to the collector to hold that he thereby allowed and approved something of which he had no knowledge and could have none until a report was received back from the collector.

The government, however, urges that the regulations of the Treasury Department and its practice has established a different rule as to credits, which should have great weight in construing these statutes; but it also, prior to the decision in the Girard Trust Company case, had the same regulation as to the date of allowance of refunds; yet the court

in that case held that a regulation of the Treasury Department and its practice in this respect was not in accord with the statute, and that it did not control the plain effect of the acts of the Commissioner and the collector. No good reason is now shown why the Department regulation as to the allowance of credits should control what appears to be the only reasonable inference to be drawn from the facts.

It is also urged by the government that, since Congress, presumably in view of the court's decision in the Girard Trust Company Case, has by its fiat in the Revenue Act of 1926 (§ 1116[b][2]; 44 Stat. 119) fixed the date of the allowance of refunds as the date of the issuing of the Schedule of Overassessments by the Commissioner, and made no provision for fixing the date of the allowance of credits, it is in effect a recognition by Congress of the regulation and practice of the Department as to the correct construction of the prior acts and of the Commissioner's instructions to the collector, as to the date of the allowance of credits.

How the Supreme Court may construe the effect of the Revenue Act of 1926 as to the time of allowance of future credits we cannot anticipate; but, so long as its decision stands as to the time of allowing a refund prior to the enactment of the 1926 act, we think that the time of allowance of credits, if any, at least prior to that act, must be the same as that of the allowance of a refund or when the Commissioner or his deputy approved the collector's report of his doings on Form 7805A.

The decision in Penn Smokeless Coal Co. v. United States (D. C.) 34 F.(2d) 205, decided in the Western District of Pennsylvania, January 3, 1929, is of little weight to the contrary, inasmuch as the sitting judge in that case inadvertently misconstrued the opinion of the Chief Justice in the Girard Trust Company Case.

The Court of Claims, however, in the case of Swift & Co. v. United States, decided May 6, 1929, followed the opinion of the Supreme Court as applied to the allowance of credits.

Even if large sums have been credited to taxpayers without the signature of the Commissioner on the collector's report after it is returned to his office, it cannot change the law, though it does not follow from facts stated by counsel in argument that the Commissioner's assent to the report of the collector may not in each case have been implied.

The judgments of the District Court are affirmed.