## WELCH INS. AGENCY v. BRAST, Collector of Internal Revenue.

### No. 3228.

Circuit Court of Appeals, Fourth Circuit.

Jan. 12, 1932.

Ira J. Partlow, of Welch, W. Va. (Joseph M. Crockett, of Welch, W. Va., on the brief), for appellant.

Okey P. Keadle, Asst. U. S. Atty., of Huntington, W. Va., and Henry L. Young, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (James Damron, U. S. Atty., of Huntington, W. Va., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The Welch Insurance Agency, a corporation, brought suit against the collector of internal revenue for the district of West Virginia to recover certain income taxes paid by it under duress in the sum of $3,371.30, composed of $2,469.82, representing the principal of the government's claim, and interest in the amount of $901.49. The case grew out of an income tax return made by the company on March 15, 1922, showing a tax liability on its part for the year 1921 in the sum of $3,293.09, of which one-fourth, $823.27, was paid when the return was filed, leaving a balance of $2,469.82 still due. Subsequently the taxpayer came to the conclusion that this return was in error on the ground that it covered the income of a personal service corporation, not liable for the payment of any income tax; and so on June 14, 1922, it filed, on forms furnished by the Treasury Department, a claim for a refund of the fourth of the tax already paid, and a separate claim for the abatement of the balance. On September 9, 1922, the Commissioner of Internal Revenue signed and transmitted to the collector of internal revenue at Parkersburg, W. Va., an assessment certificate certifying that he had made inquiries, determinations, and assessments of taxes specified in an attached assessment list as due from the individuals named thereon, including an assessment against the Welch Insurance Agency for $3,293.09, with a credit thereon of the sum of $823.27. On September 26, 1922, the receipt of the claims of the taxpayer for refund and abatement were acknowledged by letter of the Commissioner, and the taxpayer was told therein that the data necessary for the proper consideration of the case was being assembled, and that the claims would be assigned for adjustment at the earliest practicable date.

The collector stayed the collection of the taxes until after October 1, 1927, when the claims were rejected. On November 1, 1927, the collector made demand on the agency for the payment of the balance of the taxes shown on its return. On November 30, 1927, a second notice of such demand was made, and finally on July 21, 1928, the collector appeared at the office of the corporation, exhibited a distress warrant, and demanded payment of the money, whereupon the corporation, in order to avoid the distraint and sale of its property, paid the sum of $3,371.-30 as set out above. Subsequent requests for a reconsideration of the matter were denied by the Commissioner, and the pending suit was brought on September 26, 1929. The District Court found for the collector.

The government concedes that the suit was brought in ample time to test the propriety, not only of the payment of the sum of $3,371.30 on July 21, 1928, but also that of $823.27 on March 15, 1922. See section 284 (b) (1) and section 1113 of the Revenue Act of 1926, 44 Stat. 66, 116, 26 USCA §§ 1065 (b) (1), 156. But the taxpayer does not seek to recover the earlier payment in this suit, and makes no attempt to show on the merits that it was in fact a personal service corporation, exempt from income tax under the law, in the year 1921. It rests its entire case upon the narrow contention that the collector's action on July 21, 1928, in making the collection under duress, came too late and was barred by limitations. The particular ground upon which this claim rests is the following provision in section 250 (d) of the Revenue Act of 1921 (42 Stat. 264, 265): "The amount of income, excess-profits, or war-profits taxes due under any return made under this Act for the taxable year 1921 * * * shall be determined and assessed by the Commissioner within four years

after the return was filed * * * and no suit or proceeding for the collection of any such taxes * * * shall be begun, after the expiration of five years after the date when such return was filed. * * *" It is said that the Commissioner's certificate of September 9, 1922, did not constitute an assessment of the tax, and that no assessment was made within four years after the return was filed on March 15, 1922; and hence the enforced payment was without basis in law.

If the communication sent by the Commissioner of Internal Revenue to the collector on September 9, 1922, was a lawful assessment, the collection of the tax on July 21, 1928, was not barred by limitations. Section 278 (d) of the Revenue Act of 1926, 44 Stat. 9, 59 (26 USCA § 1061 and note), provides as follows: "Where the assessment of any income, excess-profits, or war-profits tax imposed by this title or by prior Act of Congress has been made (whether before or after the enactment of this Act) within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer."

■ Since the taxpayer's return was filed on March 15, 1922, the Commissioner had four years thereafter within which to make the assessment and five years to make collection of any tax found to be due, as appears in section 250 (d) of the Revenue Act of 1921, supra. These statutory periods would have expired on March 15, 1926, and March 15, 1927, respectively, except for the fact that, before these expiration dates, the effective date of the Revenue Act of 1926, to wit, February 26, 1926, occurred. See section 1214, 44 Stat. 131 (26 USCA § 1a note). By section 278 (d) of that act, the statutory period for making collections was changed, so that, instead of running concurrently with the period for making assessment, it ran successively thereto, and the Commissioner was given a period of six years from the date of the assessment within which to make collection. See Northwestern Barb Wire Co. v. United States (Ct. Cl.) 42 F.(2d) 579. The record in the pending case shows that the Commissioner signed the assessment list on September 9, 1922, and it may be taken as the date of his official action. Bashara v. Hopkins (C. C. A.) 295 F. 319; Girard Trust Co. v. U. S., 270 U. S. 163, 46 S. Ct. 229, 70 L. Ed. 524; U. S. v. Michel, 282 U. S. 656, 51 S. Ct. 284, 75 L. Ed. 598.

■ The sole question, therefore, to be decided is whether the Commissioner's action of September 9, 1922, constituted an assessment of the tax due and payable by the corporation. The taxpayer points out that section 250 (b) of the Revenue Act of 1921, 42 Stat. 264, requires the Commissioner to examine a return as soon as practicable after it is filed, and to recompute the tax if it appears that the correct amount thereof is greater or less than that shown in the return. Section 250 (d), 42 Stat. 264, 266, also provides as follows: "If upon examination of a return made under the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, or this Act, a tax or a deficiency in tax is discovered, the taxpayer shall be notified thereof and given a period of not less than thirty days after such notice is sent by registered mail in which to file an appeal and show cause or reason why the tax or deficiency should not be paid. Opportunity for hearing shall be granted and a final decision thereon shall be made as quickly as practicable. Any tax or deficiency in tax then determined to be due shall be assessed and paid, together with the penalty and interest, if any, applicable thereto, within ten days after notice and demand by the collector as hereinafter provided, and in such cases no claim in abatement of the amount so assessed shall be entertained: Provided, That in cases where the Commissioner believes that the collection of the amount due will be jeopardized by such delay he may make the assessment without giving such notice or awaiting the conclusion of such hearing."

The taxpayer concedes that ordinarily the duty of the Commissioner in making an assessment was properly performed if the return as filed was examined and audited and found to be correct and the assessment thereupon made; and that in such a case no notice of the assessment was required by law to be sent to the taxpayer. But it is said that the taxpayer's claims for refund and abatement amounted to a repudiation of its return as filed; that the Commissioner took them into consideration, as shown by his letter of September 26, 1922, and thereafter did not rely upon the original return as correct, but intended to subject the whole matter to further investigation. Hence it is said that the assessment list of September 9, 1922, was merely an interdepartmental communication,

and was not intended to be a formal assessment under the provisions of that part of section 250 (d) first quoted above. Furthermore, it is contended that, when the Commissioner rejected the claims on October 1, 1927, his action amounted to the determination by him of a deficiency in the tax of which he was obliged to give notice to the taxpayer under section 250 (d) of the Act of 1921. Not having done so, it is claimed that there has been no legal assessment of the amount due.

We think, however, that the terms of the document signed by the Commissioner on September 9, 1922, are so clear and unambiguous that it must be considered as a formal act of assessment on the part of the Commissioner. It expressly adopts the figures contained in the income tax return as correct, credits the taxpayer with the one-quarter payment made, and charges him with the balance. It is true that it contains no reference to the claims for refund and abatement; but, even if we assume that the Commissioner was chargeable with notice of these claims, we know of no reason why he could not have made the assessment, notwithstanding the fact that some of the material before him did not support it. The claims made the bare assertion that the agency was a personal service corporation, but contained no proof thereof. So far as the record in this case discloses, no proof of the assertion has ever been offered. In this state of affairs, it can hardly be said that the Commissioner had no basis for accepting the original return as correct and making an assessment accordingly.

The Commissioner did notify the taxpayer, by the letter of September 26, 1922, that its claims would be considered and submitted for adjustment, but this communication was not inconsistent with the idea that an assessment had already been made. The Revenue Act of 1921, § 252, 42 Stat. 268, permitted the taxpayer to make claim for a refund of income tax paid in excess of that properly due. Each of the claims filed by the taxpayer indicated that it was proceeding on the theory that an assessment had been made, for each contained the statement that the character of the assessment or tax was an income tax for 1921, and that the amount of the assessment was $3,293.09. It was under these circumstances that the Commissioner undertook to perform the duty imposed by section 250 (d) of the Act of 1921, supra, to make an assessment within four years after the return was made. His certificate of September 9, 1922, was obviously a performance of this duty; and it would be a distortion of the facts to hold that his act was the ascertainment of a deficiency in the tax of which the taxpayer was entitled to notice. Its interests were fully protected by the course of the Commissioner in treating the claims of June 14, 1922, as presented in order to obtain a reconsideration of a formal assessment made or to be made. The taxpayer was thereby afforded ample opportunity to test the correctness of the assessment.

The judgment of the District Court is affirmed.