## JOY FLORAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

Court of Appeals of District of Columbia.

Submitted October 3, 1928. Decided December 3, 1928.

No. 4690.

Harry Friedman, of Washington, D. C., for appellant.

M. W. Willebrandt, Asst. Atty. Gen., C. M. Charest, L. W. Scott, and Sewall Key, all of Washington, D. C., Morton P. Fisher, of Baltimore, Md., and R. C. Shaw, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. The decision involved in this appeal is reported at 7 B. T. A. 800. The facts in the case are undisputed, and present but a single well-defined question of law.

The taxes in controversy are for the fiscal year ending July 31, 1919, and accrued under the Revenue Act of 1918 (40 Stat. 1057). The taxpayer's return was made on October 15, 1919, and the deficiency assessment in question was not made until July 15, 1925. The taxpayer contends that the Commissioner possessed no lawful authority to make the assessment after the lapse of five years after the filing of the return, and that the assessment therefore was illegal. It is disclosed, however, that the Commissioner and the taxpayer consented in writing that the Commissioner might make an assessment upon the return, notwithstanding the lapse of the five-year period, but it appears that the written consent itself was not executed until after the lapse of the five-year limitation. The present issue accordingly is whether the Commissioner was barred from making the assessment after the lapse of five years after the filing of the return, and, if so, whether the bar was effectually waived in this case by the written consent of the taxpayer, notwithstanding the fact that the consent was not filed until after the lapse of the five-year period.

The issue is governed by the following sections of the Revenue Act of 1918, under which the taxes accrued, and the Revenue Act of 1924, under which the assessment was made.

Revenue Act of 1918:

"Sec. 250. (d) Except in the case of false or fraudulent returns with intent to evade the tax, the amount of tax due under any return shall be determined and assessed by the Commissioner within five years after the return was due or was made, and no suit or proceeding for the collection of any tax shall be begun after the expiration of five years after the date when the return was due or was made. In the case of such false or fraudulent returns the amount of tax due may be determined at any time after the return is filed, and the tax may be collected at any time after it becomes due." 40 Stat. 1082.

Revenue Act of 1924:

"Sec. 277. (a) (2) The amount of income, excess profits, and war profits taxes imposed by * * * the Revenue Act of 1918, * * * shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period." 26 USCA § 1057, note.

"Sec. 278. (c) Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon." 43 Stat. 299.

█ In this case no charge of fraud is brought against the taxpayer. It therefore appears that under the Revenue Act of 1918, if considered alone, the instant assessment would be invalid; for that act provided without qualification that the amount of tax due under any return should be determined and assessed by the Commissioner within five years after the return was due or made. The powers of the Commissioner, it may be noted, are purely statutory, and must be construed accordingly.

█ When Congress enacted the Revenue Act of 1924, which also is applicable to this assessment, it added the proviso contained in section 278 (c), supra, to the effect that if both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the expiration of the time prescribed in section 277 for its assessment, the tax may be assessed at any time prior to the expiration of the extended period thus agreed upon. The question arises whether the words "have consented to the assessment" relate only to an agreement made prior to the expiration of the five-year period for the purpose of extending the period, or whether they relate also to an agreement made after such period has expired, for the purpose of reviving the Commissioner's authority to make an assessment after the bar of the statute has already intervened.

The Board of Tax Appeals held that the consent thus filed after the lapse of the five-year period was valid and effective, and accordingly sustained the assessment. We are of the opinion, however, that the board erred in so ruling.

█ It is unreasonable to believe that Congress felt it necessary to provide a remedy whereby taxpayers may restore to the Commissioner the right to assess income taxes upon their returns after the statute of limitations has deprived the Commissioner of authority to make any assessment thereon. It is within common knowledge that no express remedy is required for such purpose. In this case, it may be explained, the record discloses without dispute that, when the written consent was executed by the Commissioner and the taxpayer, they both rested under the mistaken belief that the five-year period of limitation had not yet expired. The taxpayer, it appears, was led into this belief by a written notice sent to him by the Deputy Commissioner, containing an erroneous statement to that effect. Neither the Commissioner nor the taxpayer, when the consent was signed, actually intended it as a waiver of the taxpayer's rights if any, arising from the fact that the five-year period had already expired.

Furthermore, section 278 (c), supra, provides that the written consent for a later assessment shall not be operative, unless signed by the Commissioner as well as by the taxpayer. This provision plainly contemplates that the consent shall be executed at a time when the Commissioner still possesses the authority to make an assessment and when he may refuse to consent to any delay in making it. For it does not seem that the Commissioner's consent would be deemed important after he has been barred by statutory limitations from making any assessment. This view is favored also by the grammatical construction of the words of sections 277 and 278, when construed together. The first section provides that the assessment shall be made within five years after the filing of the return. The second section provides that, if "the Commissioner and the taxpayer have consented in writing" to a later assessment, the tax may be assessed at any time within the period agreed upon. The phrase "have consented," as thus employed, fairly implies that a completed consent shall have been given before the expiration of the period first provided for. It may be added that this limitation is designed to provide for the orderly administration of the government's finances, as well as for the protection of the taxpayer. Such a purpose would not be subserved, if the Commissioner and the taxpayer could afterwards agree to the making of an assessment, utterly regardless of any time limitation.

█ It may be observed that in the Revenue Act of 1928, 26 USCA § 2276 (b), Congress dealt with this subject in the following enactment, to wit:

"Section 276. (b) *Waivers.*—Where before the expiration of the time prescribed in section 2275 for the assessment of the tax, both the Commissioner and the taxpayer have

consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."

It is manifest that this provision was not regarded by Congress as an amendment of the law as enacted in section 278 (c), supra, and it should be construed as merely declaratory of the legislative purpose embodied in that section.

"It is to be observed that acts in pari materia are to be construed together as forming one act. If, in a subsequent clause of the same act, provisions are introduced, which show the sense in which the Legislature employed doubtful phrases previously used, that sense is to be adopted in construing those phrases. Consequently, if a subsequent act on the same subject affords complete demonstration of the legislative sense of its own language, the rule which has been stated, requiring that the subsequent should be incorporated into the foregoing act, is a direction to courts in expounding the provisions of the law." Chief Justice Marshall, in Alexander v. Alexandria, 5 Cranch, 7, 3 L. Ed. 19.

"If it can be gathered from a subsequent statute in pari materia what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute." 25 H. C. L. p. 1064, § 288.

We are of the opinion that the decision of the board should be, and it is, reversed, with costs, and cause remanded, with directions to the board to sustain the appeal of the taxpayer.