## SPEAR & CO. v. HEINER, Collector of Internal Revenue.

District Court, W. D. Pennsylvania. June 5, 1929.

No. 5609.

Eugene B. Strassburger and Smith, Shaw & McClay, all of Pittsburgh, Pa., for plaintiff.

John D. Meyer, U. S. Atty., and John A. McCann, Asst. U. S. Atty., both of Pittsburgh, Pa., for defendant.

## Findings of Fact.

McVICAR, District Judge. 1. The said plaintiff is, and at all times herein mentioned was, a corporation organized and existing under the laws of the state of New Jersey and maintaining its principal office in the city of Pittsburgh, in the commonwealth of Pennsylvania.

2. The defendant at all times pertinent to this case was, and is, collector of internal revenue for the Twenty-Third district of Pennsylvania, and resident within the Western district of Pennsylvania.

3. For the year 1917 the plaintiff kept its books of account and filed its federal income and excess profits tax return on the calendar year basis and by the accrual method of accounting.

4. On or about the 18th day of March, 1918, the plaintiff duly filed its income and excess profits tax return for 1917 with the then collector of internal revenue for said Twenty-Third district, and then and thereaftter duly paid to said collector the income and excess profits taxes appearing by said return to be owing to the government of the United States, to wit, the sum of $21,341.52.

5. By letter dated January 21, 1920, the Commissioner of Internal Revenue notified the plaintiff that its said return was erroneous; that he, the Commissioner, had made divers changes and adjustments in the plaintiff's tax liability as shown on said return and in the figures on which such tax liability was computed; and that as the result of said changes and adjustments, plaintiff owed to the government of the United States additional income and excess profits tax for 1917 in the sum of $16,074.53.

6. On or about February 2, 1922, the Commissioner of Internal Revenue assessed against the plaintiff an additional tax for the year 1917 in the amount of $16,074.53.

7. On or about February 8, 1922, defendant made demand upon the plaintiff for the payment of the said additional assessment.

8. On or about February 18, 1922, plaintiff paid to the collector $1,180.43 of the additional assessment, and filed a claim in abatement of the balance of $14, 894.10.

9. On March 20, 1923, the Bureau of Internal Revenue sent to the plaintiff the following letter:

"March 20, 1923.

"Spear and Company, 915 Penn Avenue, Pittsburgh, Pennsylvania—Sirs: Since this office is by an act governing prohibited from assessing tax for the calendar year 1917 after the expiration of five years from date of filing, you are requested to execute and return

to this office without delay the enclosed waiver form, in order that the amount of $5,152.75 additional tax for the year indicated discovered in an examination of your books may be assessed without further delay.

"Respectfully,

"[Signed]     N. W. Chatterson,

Deputy Commissioner.

"By: Chief of Section."

10. On March 28, 1923, plaintiff replied as follows:

"March 28, 1923.

"In re: Spear & Company 1917 Income and Profits Tax.

"Commissioner of Internal Revenue, Washington, D. C.—Dear Sir: In reply to your favor of the 20th inst., I am enclosing herewith waiver of Spear & Company, permitting your office to reassess any amount that may be due for 1917 taxes at any time within one year from this date.

"Your letter of the 20th inst., states that you desire the waiver in order that 'additional taxes *  *  * may be assessed without further delay'. There is no need of your obtaining a waiver if you desire to make the assessment immediately, and if such is your intention please return the waiver. If, on the other hand, you desire the waiver in order that you may have sufficient time to make a careful audit, giving us an opportunity to be heard, then you may retain the waiver. I have seen a great many letters requesting waivers, but have never seen one in the form of yours of the 20th inst. The waiver is sent to you upon the condition above indicated.

"Yours truly,

"[Signed]     E. B. Strassburger."

Accompanying this letter was the following waiver:

"Income and Profits Tax Waiver

"In pursuance of the provisions of subdivision (d) of Section 250 of the Revenue Act of 1921, Spear and Company of Pittsburgh, Pennsylvania, and the Commissioner of Internal Revenue, hereby consent to a determination, assessment, and collection of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of the said Spear and Company for the years 1917 under the Revenue Act of 1921, or under prior income, excess-profits, or war-profits tax Acts, or under Section 38 of the Act entitled 'An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes', approved August 5, 1909, irrespective of any period of limitations, but not later than one year from the date hereof.

"[Signed]     Spear & Company, Taxpayer,

"By: N. Spear, President.

"[Signed]     D. H. Blair, Commissioner.

"[Seal.]                    4/3/23

"If this waiver is executed on behalf of a corporation, it must be signed by such officer or officers of the corporation as are empowered under the laws of the State in which the corporation is located to sign for the corporation, in addition to which, the seal, if any, of the corporation must be affixed."

This waiver was signed on behalf of the Commissioner on April 3, 1923.

11. Plaintiff and the Commissioner of Internal Revenue mistakenly believed that the statute of limitations had not run when the waiver of March 18, 1923, was furnished.

12. There was no consideration for the waivers of March 18, 1923, and January 18, 1924.

13. By letter dated September 5, 1923, the claim for abatement of $14,894.10 was denied.

14. On the same date, September 5, 1923, the Bureau sent a 30-day letter to the plaintiff proposing a further assessment of $5,186.26.

15. On September 29, 1923, the plaintiff appealed to the Committee on Appeals and Review from the action of the Bureau rejecting the claim in abatement and requested an oral conference. At the same time it filed a brief called "Application for Reconsideration." The case was referred to the Committee on Appeals and Review.

16. On January 18, 1924, plaintiff filed with Bureau of Internal Revenue the following waiver:

"January 18, 1924 (Date)

"Income and Profits Tax Waiver

"In pursuance of the provisions of subdivision (d) of Section 250 of the Revenue Act of 1921, Spear and Company, of Pittsburgh, Pennsylvania, and the Commissioner of Internal Revenue, hereby consent to a determination, assessment, and collection of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of the said Spear and Company for the year 1917 under the Revenue Act of 1921, or under prior income, excess-profits, or war-profits tax Acts, or under Section 38 of the Act entitled 'An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes', approved August 5, 1909. This waiver is in effect from the date it is signed by the taxpayer and will remain in effect for a period of one year after the expiration of the statutory period of limitation, or the

statutory period of limitation as extended by any waivers already on file with the Bureau, within which assessments of taxes may be made for the year or years mentioned.

"[Signed] Spear and Company, Taxpayer,
"By N. Spear, Pres't.
"[Signed] D. H. Blair, Commissioner.
"[Seal.]

"If this waiver is executed on behalf of a corporation, it must be signed by such officer or officers of the corporation as are empowered under the laws of the State in which the corporation is located to sign for the corporation, in addition to which, the seal, if any, of the corporation must be affixed."

The waiver was duly signed by the Commissioner of Internal Revenue.

17. On February 14, 1924, plaintiff filed a brief with the Committee on Appeals and Review. The Committee sustained the Bureau as to the additional assessment.

18. The outstanding unpaid additional assessment of $20,080.36 for the year 1917 was collected on February 16, 1925, by crediting a portion of an overassessment due the taxpayer for the year 1918 against the said additional assessment.

19. On October 1, 1917, the plaintiff and one Eli Guggenheim, a stockholder, entered into the following written agreement:

"This contract entered into this 1st day of October, 1917, between Spear & Company, a corporation organized under the laws of New Jersey, hereinafter styled 'Spear' and Eli Guggenheim, hereinafter styled 'Guggenheim,' witnesseth:

"Guggenheim sells to Spear five hundred shares of the Capital Stock of Spear & Company. In payment of said shares, Spear agrees as follows:

"To pay the indebtedness owing by it to the Market National Bank of Cincinnati, Ohio, amounting to $55,000.00; which does not include a note of $5,000.00 dated September 18, 1917, which Guggenheim agrees to pay at maturity.

"To pay the following notes owing by it amounting to $41,308.25, Guggenheim to pay interest on the same up to October 1, 1917:

"A. Guggenheim, $2290.68.
"Mrs. E. B. Kaufman, $6000.00.
"Adelaide Kaufman, $7263.18.
"Adelaide Kaufman, $7363.13.
"Mrs. Ike Nier, $16471.59.
"Mrs. Ike Strauss, $1000.00.
"Jack Guggenheim, $919.67.

"To execute a Bill of Sale conveying to Guggenheim, free and clear from all liens and warranting the title, all the Merchandise Accounts, Bills Receivable, Conditional Sales Contracts, Chattel Mortgages, Fixtures and all other assets located in the Cincinnati Store and Warehouse, or now in transit to Cincinnati, now owned by Spear, and the Good Will of the Cincinnati business; subject, however, to this condition: that Guggenheim shall not have the right after December 31, 1919, to use the name of Spear in any form in the conduct of his business.

"Spear agrees to sublet (using the copyrighted long form as now prepared by W. H. Anderson & Co. of Cincinnati, Ohio,) to Guggenheim, the premises now occupied by Spear & Co. at the south-west corner of Race & Shillito Place, Cincinnati, Ohio, for a period expiring December 31, 1919, the annual rental to be eighteen thousand dollars, payable in equal monthly installments of fifteen hundred dollars on the first of each and every month in advance to the then lessors of the building, and Guggenheim is to assume all the conditions and obligations of the original lease from Emery to Spear, relating to alterations, changes and insurance, and the same shall be embodied in the sub-lease or sub-leases from Spear to Guggenheim. And Spear agrees to further sub-let (using the same form as above stated) to Guggenheim for an additional term of five years beginning January 1, 1920, at a rental of Twenty thousand dollars a year payable to the then lessors of the building monthly in advance provided Guggenheim gives to Spear before December 31, 1917, security satisfactory to Spear for the payment of the rentals beginning January 1, 1920.

"As a further consideration of the sale by Spear to Guggenheim of the within-before mentioned assets, Guggenheim agrees that he will not consider that Spear has violated any of the covenants of this contract if it continues to solicit business in the State of Ohio and elsewhere through its mail order department.

"It is mutually agreed between Spear and Guggenheim that neither one will take away or hire any of the present employees of their respective organizations without the written consent of the other. Inasmuch as it is very difficult to estimate the damages arising out of a violation of this paragraph, it is agreed that the one so violating its provisions shall pay to the other the sum of $10,000, which shall not be considered as a penalty but as liquidated damages.

"Guggenheim agrees to pay all taxes of whatever kinds, Government, State, County or otherwise, now due or which may become due arising out of the conduct of the Cincin-

nati business, as well as all other obligations existing or arising out of the conduct of the said Cincinnati business.

"Spear agrees that it will guarantee that Max Guggenheim, who is a creditor of Guggenheim to the extent of Thirty-nine thousand nine hundred and thirty one dollars and twenty seven cents ($39931.27) will cancel five thousand dollars ($5,000) of said indebtedness and will pay said Max Guggenheim the further sum of Nineteen thousand, nine hundred and thirty-one dollars and twenty-seven cents ($19931.27) leaving a balance of Fifteen thousand dollars ($15000) owing by Guggenheim to Max Guggenheim, which Guggenheim agrees to pay on or before January 1, 1918, without interest. If Guggenheim fails to pay at the time stipulated, then said sum of Fifteen thousand dollars is to draw interest at the rate of four per cent. per annum from October 1, 1917.

"Spear shall have the right to use up its stationery and advertising matter now on hand, said advertising matter and stationery making mention of the Cincinnati store.

"Spear does not warrant the payment of the chattel mortgages and other contracts made with its retail customers.

"Any rebate due from the $55000.00 notes discounted at the Bank shall belong to Guggenheim.

"[Signed]   Eli Guggenheim
"Spear & Company
"By N. Spear, Pres't.
[Seal, Spear & Co.]
"Alexander Spear
"Max Guggenheim."

20. And on the same day the same parties made and entered into the following written agreement:

"Know all men by these presents:

"That Spear & Company, a corporation organized under the laws of New Jersey, in consideration of One dollar and other good and valuable considerations, and the carrying out of the provisions of a certain contract entered into on even date herewith between Spear & Co. and Eli Guggenheim to it paid by Eli Guggenheim, the receipt whereof is hereby acknowledged, have bargained, sold, granted, and conveyed, and by these presents do bargain, sell, grant, and convey unto the said Eli Guggenheim, his executors, administrators, and assigns, all the Merchandise, Accounts and Bills Receivable, Conditional Sales Contracts, Chattel Mortgages, Fixtures and all other assets located in the Cincinnati Store and Warehouse, or now in transit to Cincinnati, now owned by Spear, and the Good Will of the Cincinnati business; also

autos and wagons located in Cincinnati, Ohio; subject, however to this condition: that Guggenheim shall have the right until December 31, 1919, to use the name and word of 'Spear' in connection with and conduct of his business, but not thereafter, except so far as he may find it necessary or advisable in the collection by legal process only, of accounts or bills receivable.

"To save and to hold the same unto the said Eli Guggenheim, his executors, administrators, and assigns forever.

"And the said Spear & Company for itself and for its successors and assigns, does hereby covenant with the said Eli Guggenheim, his executors, administrators, and assigns, that it is the true and lawful owner of the said described goods hereby sold, and has full power to sell and convey the same; that the title, so conveyed, is clear, free and unincumbered; and further, that it does warrant and will defend the same against all claim or claims of all persons whomsoever.

"In Witness Whereof, the said Spear & Company, a corporation by Nathaniel Spear, its President duly authorized thereunto has hereunto set its hand this first day of October, in the year of our Lord, one thousand nine hundred and seventeen.

"[Signed]   Spear & Company
"By N. Spear, Prest.
"Signed and delivered in the presence of
"[Signed]   Wm. Good
"May Zorg"

21. The depreciated cost of the mail cuts which were abandoned, written off on plaintiff's books on December 31, 1917, and taken as a deduction on its return, was $9,233.80.

### Conclusions of Law.

1. The plaintiff is entitled to deduct from gross income for the year 1917, the loss occasioned by the abandonment of its mail cuts.

2. The collection of this tax, having been made after the bar of the statute of limitations had become effective, was unlawful, and plaintiff is entitled to recover the full amount of its claim.

### Opinion.

Plaintiff brought this action to recover $20,080.36 with interest thereon which, it avers, was the amount of the illegal tax that it was required to pay by the defendant; that the Commissioner of Internal Revenue made an illegal assessment against plaintiff for the year 1917, in that he refused to allow a credit for a loss the company sustained on the sale of its Cincinnati store and for depreciation on certain cuts; and further that the collec-

tion of the tax was barred by the statute of limitations.

Defendant denied the alleged illegal assessment, payment and bar of the statute of limitations, and alleged certain waivers. A jury trial was waived by the parties. The court has made the foregoing findings of fact, which obviate a more lengthy statement herein.

■ Was the collection of the tax in this case barred by the statute of limitations? Revenue Act 1924, § 277(a)(2), 26 USCA § 1057, note. Admittedly the statute (Revenue Act 1921, § 250(d), 42 Stat. 265) barred the collection March 19, 1923 (that date being five years after plaintiff made its return and paid the tax appearing to be due thereon for the year 1917). Under the then applicable acts of Congress, was this bar removed by the waivers of March 20, 1923, and January 18, 1924? Statutes of limitations are favored in the law. In Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807, the court said: "Statutes of limitations are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary."

■ Taxing statutes are to be construed most strongly in favor of the taxpayer and against the government. Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211; Bowers v. New York & Albany Lighterage Company, 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676; and Russell v. United States, 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255.

■ There is no common-law remedy for the collection of a tax, it being not a debt in the ordinary sense of the word. In 37 Cyc. 710, it is stated: "As the obligation to pay taxes does not rest upon any contract express or implied, or upon the consent of the taxpayer, a tax is not a debt in the ordinary sense of that word; and for the same reason taxes are not assignable as ordinary debts, unless it is expressly so provided, nor are they the subject of set-off between the taxpayer and the state or municipality, nor do they draw interest like ordinary obligations, save where the statute so declares." Also at page 1240:

"As a tax is not a debt in the ordinary meaning of that word, it is generally held that no action will lie for its recovery, that is, that a suit at law cannot be maintained against the taxpayer unless a statute authorizes such an action."

■ There is no authority for the execution of waivers after the statute has run. This was ruled in the case of Joy Floral Company v. Commissioner of Internal Revenue, 58 App. D. C. 277, 29 F.(2d) 865, 867, wherein it is stated: "This provision (referring to the statute of limitations) plainly contemplates that the consent shall be executed at a time when the Commissioner still possesses the authority to make an assessment and when he may refuse to consent to any delay in making it. For it does not seem that the Commissioner's consent would be deemed important after he has been barred by the statutory limitations from making any assessment. This view is favored also by the grammatical construction of the words of sections 277 and 278 [Revenue Act 1924, 26 USCA § 1057 note and § 1058 et seq.] when construed together. The first section provides that the assessment shall be made within five years after the filing of the return. The second section provides that, if 'the Commissioner and the taxpayer have consented in writing' to a later assessment the tax may be assessed at any time within the period agreed upon. The phrase 'have consented,' as thus employed, fairly implies that a completed consent shall have been given before the expiration of the period first provided for. It may be added that this limitation is designed to provide for the orderly administration of the government's finances, as well as for the protection of the taxpayer. Such a purpose would not be subserved, if the Commissioner and the taxpayer could afterwards agree to the making of an assessment, utterly regardless of any time limitations."

■ Such provision must be supported by a consideration. Walsh v. Price, D. C. E. D. N. Y., November 20, 1928, 34 F.(2d) 57 (1929 C. C. H., Section D–9030). There was no consideration in the instant case. The waivers did not remove the bar of the statute of limitations.

Let an order be prepared by counsel ordering the entry of judgment in favor of the plaintiff in accordance with the conclusions of law and this opinion.