**MOSES et al. v. UNITED STATES.**

No. 4134.

District Court, E. D. New York.

July 31, 1930.

Daniel Austin Shirk, of New York City, and Lowndes C. Connally and Maurice Kay, both of Washington, D. C., for plaintiffs.

Howard W. Ameli, U. S. Atty., and Albert D. Smith, both of Brooklyn, N. Y., and Ralph E. Smith and Eugene Harpole, both of Washington, D. C., for the United States.

INCH, District Judge.

On November 11, 1929, plaintiffs, as executors of the estate of Benjamin Adriance, deceased, commenced this action against the United States, to recover the sum of $52,-516.36. Issue having been raised by the defendant, the suit came on for trial before me without a jury.

The answer of the defendant, in addition to denials, etc., contains two separate defenses; the first, in substance, being that the plaintiffs have no cause of action because of a certain waiver or consent duly executed by them, and the second that plaintiffs' cause of action is outlawed and barred by the statute of limitations.

All the facts are contained in a stipulation and supplemental stipulation offered in evidence and made part of the record.

The sole questions to be decided are law questions.

Before referring to the facts necessary for a decision, it may be said that the action presented is not only an interesting and somewhat difficult one, but one where the temptation is found both by counsel and the court to wander from the real issue which is somewhat obscured by incidental matters.

The court has had the benefit of most excellent briefs prepared by counsel for both parties. On the trial plaintiffs were allowed to amend their complaint by conforming same to the agreed and stipulated facts.

There was and is no intimation of any surprise on the part of the defendant nor could there well be, nor was any new cause of action thus introduced, for, in spite of the

effort of the pleader to cover all possible reasons for a recovery in their complaint and a possible wavering from one position to another, the real issue presented by the complaint and answer is sufficiently clear and the said amendment is but one of the admitted facts to be considered in deciding the law.

Both the plaintiff executors are residents of this district.

On March 1, 1916, Benjamin Adriance, apparently a resident of New Jersey, filed his income tax return for the calendar year 1915. This return shows that his tax was $466.83. It was duly paid.

The following year, and on March 31, 1917, Mr. Adriance filed his income tax return for the year 1916. This disclosed an income tax of $82,502.84. A few months thereafter Mr. Adriance paid this tax to the government.

About a year and one-half afterwards, and on January 3, 1919, Mr. Adriance died. Plaintiffs became the executors of his estate.

Three years afterwards and on January 11, 1922, plaintiffs, as such executors, determined that there had been a mistake made by Mr. Adriance in these two returns of his for 1915 and 1916, and they thereupon filed amended income returns, asserting and disclosing that for the year of 1915 Mr. Adriance's income tax should have been $52,983.24 instead of $466.83, and asserting and disclosing that the income tax of Mr. Adriance for the year 1916 should have been $1,114.25 instead of $82,502.84.

Assuming that the government would find that they were correct, the plaintiffs, as such executors, at the same time, to wit, January 11, 1922, filed a claim for a refund of $28,872.18 of the income tax of Mr. Adriance for the year of 1916, which had been paid by Mr. Adriance on June 14, 1917.

This claim for a refund set forth the reasons for it; they being, in substance, that the income tax return of Mr. Adriance had been improperly prepared due to the unfamiliarity of his bookkeeper with the income tax law and the transactions involved, and that a large part of the income so reported for the year 1916 had been received in December, 1915, and should have been reported in the return for the year 1915 and not 1916.

This claim further asserted that Mr. Adriance owed $52,984.24 for the year 1915 and that he only owed $1,114.25 for the year 1916, and as Mr. Adriance had paid all these taxes the sum of $28,872.18 should be refunded to the executors.

The following year, and on April 4, 1923, the Commissioner of Internal Revenue notified the plaintiffs, by letter, that a redetermination of the taxes of Mr. Adriance for the years of 1915 and 1916 had been made, and that the result of this was that Mr. Adriance had been overassessed for the year 1916 in the sum of $91,388.59 (an additional assessment of $10,000, having been determined on December 19, 1919, but was afterwards vacated and is not involved in this suit), and that an additional tax for the year of 1915 of $52,516.36 had been assessed.

This was substantially in conformity with the claim of the plaintiffs.

About two weeks thereafter, on April 20, 1923, the plaintiffs, as executors, signed and transmitted to the Commissioner a paper, which had been sent to them from his office, and which is entitled: "Agreement Consenting to Assessment of Additional Tax."

This agreement was not signed by the Commissioner or the Secretary of Treasury or any officer so far as I can see. It was signed by the two executors. By it they stated that they "hereby consent to immediate assessment of the additional tax aggregating $52,516.36 as indicated by letter from the Commissioner of Internal Revenue, Washington, D. C., dated April 4, 1923."

Following their signatures is a printed notice commencing with: "For your information," etc. It calls attention of the taxpayer to his right to have 30 days' delay, but that if they agree to the finding, action on the overassessment can be expedited by signing and returning the agreement without delay.

It is this paper that defendant refers to in its first defense, claiming that it constituted a deliberate agreement and consent to the assessment of this additional tax for the year of 1915 and thereby extended the time in which the Commissioner could make the collection of the tax for the year of 1915 which was otherwise barred, according to plaintiffs, by the statute of limitations.

Section 250(d), Revenue Act of 1921 (42 Stat. 227), allowed the Commissioner five years after a return was filed to determine and assess the tax "unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax."

The plaintiffs, in support of their contention that this was not such a consent, as-

sert that it was never signed by the Commissioner, that the statute of limitations as to the collection of the 1915 tax had long since run, and that it was never the intention of either the Commissioner or the plaintiffs that it should be the formal agreement contemplated by the statute above referred to.

A number of decisions of the United States Board of Tax Appeals are cited by plaintiff. Sherman v. Commissioner, 16 B. T. A. 786; Chadbourne v. Commissioner, 16 B. T. A. 961. Also decisions by courts. Greylock Mills v. Commissioner, 31 F.(2d) 655 (C. C. A. 2); W. P. Brown v. Commissioner (C. C. A.) 38 F.(2d) 425; Botany Mills v. U. S., 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379; Joy Floral Co. v. Commissioner, 58 App. D. C. 277, 29 F.(2d) 865; Spear v. Heiner (D. C.) 34 F.(2d) 795; Columbian Iron Works v. Brock (D. C.) 38 F.(2d) 816; Pictorial Co. v. Commissioner (C. C. A.) 38 F.(2d) 563.

It can be seen therefore that some form of this question has been before various courts with various results, and it is now stated that the question is pending before the United States Supreme Court. W. P. Brown & Co. v. Commissioner, 281 U. S. 718, 50 S. Ct. 466, 74 L. Ed. 1137, by writ of certiorari.

Suffice it to say that a little over two months after the receipt from plaintiffs of this paper and on July 14, 1923, the Commissioner duly signed a schedule of overassessment, carrying into effect the plan outlined, and, pursuant to instructions from the Commissioner, the collector of internal revenue, on October 31, 1923, reported that he had applied $52,516.36 of the overassessment found against Mr. Adriance for the year of 1916 as a credit against the taxes due from Mr. Adriance for the year of 1915, and that he had abated the sum of $10,000, and that the sum of $28,872.23 was refundable.

Thereupon, and on November 17, 1923, the Commissioner of Internal Revenue authorized the disbursement from the Treasury Department to refund the sum of $28,872.23 of the overpayment for the year of 1916 to the plaintiffs as executors of the estate of Benjamin Adriance.

Plaintiffs admitted they received this sum and accepted it.

Plaintiffs, as executors, during the years following this adjustment, whether legal or not I do not determine, came to the conclusion that the Commissioner had been in error in attempting to credit this proportion of the overassessment of 1916 on a tax of 1915 although same was admittedly due from Mr. Adriance for that year.

Accordingly, on January 30, 1929, plaintiffs filed a demand with the Commissioner for the additional refund of this sum of $52,-516.36, on the ground that it had been erroneously applied as a credit to the 1915 tax after the collection of that tax for that year had been barred by the statute of limitations.

The Commissioner refused to pay. On November 11, 1929, plaintiffs commenced this action.

On the trial, counsel (Mr. Connally) for plaintiffs maintained that there were only two questions involved. One related to the above-alleged consent in writing. The other was whether the action had been brought in time. Counsel stating, "If the Government can maintain either one we have not a leg to stand on."

Before discussing the question whether the suit was brought in time, it is most necessary to decide the nature of this suit and the question of jurisdiction. Davidson v. Rafferty (D. C.) 34 F.(2d) 700, affirmed (C. C. A.) 39 F.(2d) 1022.

It will be noticed that this is a suit against the United States, not against the collector. It has, however, been stipulated that Mr Duffy, the then collector of revenue, Fifth district of New Jersey, to whom the taxes had been paid by Mr. Adriance in the years 1915 and 1916, is not now, and was not at the time of the commencement of this action, in office.

There are indeed certain allegations in the complaint and in the briefs of counsel for plaintiffs and in statements of counsel for plaintiffs at the trial which furnish a basis for the counsel for the government to insist that this action is not one contemplated by the so-called Tucker Act (28 USCA § 41, par. 20), and that therefore the claim, if any, must be prosecuted by plaintiffs before the Court of Claims.

On the other hand, the plaintiffs maintain, and I do not consider it inconsistent with the complaint, that this is an action to recover the sum of $52,516.36 representing an overpayment determined by the Commissioner of Internal Revenue for the year 1916.

This overpayment was made on June 14, 1917, by Mr. Adriance, during his lifetime.

It is therefore, in my opinion, not an action to recover an unlawful credit against the 1915 tax, nor an action based on an im-

plied contract, or one for misappropriation of funds.

It is an action to recover internal revenue taxes erroneously collected from Mr. Adriance for the year 1916.

This court therefore has jurisdiction regardless of the fact that the recovery sought exceeds $10,000. Tucker Act, title 28, chap. 2, § 41(20), USCA (Judicial Code, § 24 (20), as amended).

The statutory time for the direct collection of a tax for 1915 had expired a considerable time previous to the receipt of the amended tax returns for 1915 and 1916 (January 11, 1922).

Section 250(d), Revenue Act of 1921 (42 Stat. 227), decreed the time as five years after a return was filed unless the Commissioner and taxpayer consented in writing to a later determination assessment and collection.

Section 252 of the same act states that no such credit shall be allowed after five years from the day when the return was due unless within that time a claim had been filed by the taxpayer.

Sections 607 and 609 (a) and (c) of the Revenue Act of 1928 (26 USCA §§ 2607, 2609(a)(c), do not change this and make the time limitation applicable to all previous attempts to credit.

The executors of Mr. Adriance filed no claim within the five years subsequent to March 1, 1916, as to the 1915 tax. They did file a claim on January 11, 1922, which was within the five years from March 31, 1917, when Mr. Adriance filed a return of his income for the year 1916 disclosing the now conceded overpayment.

The above would seem to make it exceedingly doubtful whether or not a mere consent alleged by the government to have taken place on April 20, 1923, even if found to have been a consent, would avail.

Plaintiff, however, apparently argues that if this consent is found it is a good defense, but denies that there was any such consent as contemplated, claiming that, at best, it was but an informal settlement that did not constitute a binding agreement. Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379.

In substance the statement that some $52,000 was correctly due from Mr. Adriance for the year 1915 was first made by plaintiffs as executors of his estate. They stated in writing that an overpayment had been made by him for the year 1916 and that this left a balance of some $26,000, which should be refunded to his estate.

The Commissioner received this proposition of the executors and after investigation found it to be substantially correct. He thereupon signed and sent a letter substantially to this effect. Upon receipt of this letter the executors signed an agreement to carry this proposal into effect.

To be sure the Commissioner did not sign the exact paper returned by the executors, yet this paper must be read with the letter of the Commissioner of April 4, 1923, which was so signed.

These two papers would in ordinary business be considered together.

The law requires a "consent in writing." W. P. Brown Co. v. Commissioner (C. C. A.) 38 F.(2d) 425–428.

Thereafter the proposal of the executors was actually carried into effect and the balance claimed to be due of some $28,000 was paid to the executors and accepted by them, and the matter remained closed for a period of almost six years, when, on January 30, 1929, the executors made this further claim now in suit.

I can readily see how mere negotiations between subordinate officials or the mere sending or signing by the taxpayer alone of the so-called form of agreement might not be sufficient evidence of any consent such as is required especially in the absence of sufficient evidence of deliberate intention, clearly and plainly shown, on the part of the taxpayer, but, if the admitted facts here do not show a deliberate and plain consent in writing and intent on the part of all parties to have a sum of approximately $52,000 applied to the 1915 tax and the balance of approximately $28,000 returned to the taxpayer, I am at a loss to know what it does show.

In my opinion, therefore, the facts here show that there was a written consent within the fair reading and intendment of the law.

There has never been a claim filed for a refund of the 1915 tax, nor until January 30, 1929, has there been filed a specific demand for the refund of the sum here involved.

The claim for refund filed January 11, 1922, not only was for a specific sum which was thereafter paid and accepted by plaintiffs, but the true basis of that claim was that the sum now sued for was neither demanded nor expected.

Section 3226 of the Revised Statutes as amended (26 USCA § 156), provides "no suit or proceeding shall be maintained in any court for the recovery of any Internal-Revenue tax alleged to have been erroneously or illegally assessed or collected * * * or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed. with the Commissioner of Internal Revenue. * * * No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. The commissioner shall within 90 days after any such disallowance notify the taxpayer thereof by mail." Section 1113(a), Revenue Act 1926 (26 USCA § 156).

Mr. Adriance made his overpayment of his 1916 tax on June 14, 1917. Five years from this date would be June 14, 1922. This suit was not commenced until November 11, 1929. No claim was filed for the refund until January 30, 1929, nor has there been any rejection of the claim for the refund that was filed by plaintiffs on January 11, 1922. On the contrary, it would appear to have been accepted and agreed to. However, assuming as plaintiffs claim that subsequently and by inference the Commissioner did reject the claim for refund of January 11, 1922, so far as this surplus now sued for is concerned, such rejection occurred on November 17, 1923, when the Commissioner made his final disposition of the claim before him and authorized the disbursement from the Treasury Department of the refund of $28,872.23 representing the overpayment for the year 1916 by Mr. Adriance.

Plaintiffs had full notice of all the facts on which this determination rested and accepted it. By this I do not mean that they waived their legal rights or remedies, but I do mean that from their viewpoint this must have clearly been a rejection of a refund of the larger sum now sued for.

The final action of the Commissioner therefore occurred November 17, 1923. Girard Trust Co. v. United States, 270 U. S. 163, 46 S. Ct. 229, 70 L. Ed. 524.

The plaintiffs were duly notified of the Commissioner's action within 90 days thereafter by the receipt of the certificate of overassessment mailed November 28, 1923.

If this therefore was a rejection of the refund of the sum now sued for, plaintiffs had two years thereafter in which to commence this suit. This extended their time two years from November 17, 1923, to November 17, 1925. This action was not commenced until November 11, 1929, almost six years after the claim had been so rejected.

Plaintiffs do not rely, however, on any revenue law as to this period of limitation, but upon the time given a litigant, bringing any suit over which the District Court has jurisdiction, to bring it within six years after "the right accrued" for which the claim is made. 28 USCA, chap. 2, § 41, subd. 20. They further contend that owing to certain procedure in the Commissioner's office prior to the decision of the Girard Trust Company Case and for various other reasons including that of the failure of the right to credit overpayments, the final rejection of the claim did not occur on November 17, 1923, and that it was not until some time later when the certificate of overassessment was actually received that their cause of action accrued and, this action having been brought within six years of that date, this defense of the defendant must fail.

Thus the government insists that if this court is to consider that it has jurisdiction, that Revised Statutes § 3226, as amended and re-enacted (26 USCA § 156), governs and that this suit was not brought within five years from June 14, 1917, when the tax was paid by Mr. Adriance, nor was it commenced within two years after the disallowance of the part of the claim to which this suit relates; the extreme limit in which such disallowance could be considered as having taken place, being November 17, 1923.

Plaintiffs, on the other hand, assert that the Revised Statute in question is not applicable for the reason that the nature of this suit is not to recover a rejected claim but to recover an overpayment of an income tax [Peerless Paper Box Co. v. Routzahn (D. C.) 22 F.(2d) 459], and that the statute providing the limitation period applicable is that contained in 28 USCA chap. 2, § 41 (Judicial Code, § 24, as amended), subdivision 20, which states: "No suit against the Government of the United States shall be allowed under this paragraph unless the same shall have been brought within six years after *the right accrued* for which the claim is made." (Italics mine.)

Accordingly, when did the right accrue to plaintiffs to recover this overpayment?

"A cause of action accrues when suit may be commenced for a breach of contract." 1 Bouv. Law Dict. (3d Rev.) 111; Amy v. Dubuque, 98 U. S. 470, 25 L. Ed. 228.

When therefore was the first time that plaintiffs could sue to recover this sum now sought?

It seems to me that it was when the right of the government to credit the overpayment on the 1915 tax became barred.

According to plaintiffs this was March 1, 1921.

Plaintiffs deny that there was any waiver or consent.

If we apply therefore this general provision as to limitation applicable to all suits, in the absence of the special statute, plaintiffs did not commence their suit until almost eight years after their cause of action accrued. According to plaintiffs it is from March 1, 1921, that the government has unlawfully withheld this overpayment by Mr. Adriance.

A statute of limitations commences and runs regardless of the intention and desires of parties, in the absence of another statute to the contrary, or an express waiver, or consent. None is claimed to exist here by plaintiffs.

To be sure they claim that the cause of action "accrued" much later, but according to their own theory on and after March 1, 1921, the government possessed the money representing this overpayment by their testator and because of the bar of the statute had no right to do anything thereafter with it except to return it to him or his estate.

The contention of the government that, this being a revenue suit, Revised Statutes, § 3226, as amended, governs, gives a longer time than the statute claimed by plaintiffs. But even under this statute plaintiffs have failed to bring the suit in time.

Revised Statutes, § 3226, as amended, is not inconsistent with the so-called "Tucker Act," relied upon by plaintiffs for the purpose of showing jurisdiction in this court. United States v. Finch, 201 F. 95, Ann. Cas. 1916A, 319 (C. C. A. 7).

Plaintiffs' theory of implied contract or unlawfully withholding would automatically compel the court to hold that it had no jurisdiction regardless of this question of limitation.

On the other hand, both plaintiffs and defendant assert, and I believe correctly, that this is an action to recover an overpayment of income tax, paid in 1917, on a 1916 tax, and that therefore under the so-called "Tucker Act" this court has jurisdiction.

Having jurisdiction, I find that the claim of plaintiffs is barred by statute.

The complaint is dismissed.