PANTHER RUBBER MFG. CO. v. COMMIS-
SIONER OF INTERNAL REVENUE.

PANCO RUBBER CO. v. SAME.

Nos. 2438, 2439.

Circuit Court of Appeals, First Circuit.

Nov. 26, 1930.

Frank J. Albus, of Washington, D. C., and LaRue Brown, of Boston, Mass., for petitioners for review.

F. Edward Mitchell, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Joe S. Franklin, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for the Commissioner.

Before BINGHAM, ANDERSON, and WILSON, JJ.

WILSON, J.

These cases are appealed to this court from the Board of Tax Appeals under section 1001 of Revenue Act of 1926, as amended by section 603 of the Revenue Act of 1928 (26 USCA § 1224).

On September 16, 1919, both companies filed an income return for 1919 on a fiscal year basis ending June 30, 1919. Under section 250(d) of the Revenue Act of 1921 (42 Stat. 265), and section 277(a)(2) of the Revenue Act of 1924 (26 USCA § 1057 note), the five-year period for assessing a tax against the petitioners expired on September 16, 1924.

On October 31, 1924, or two months after the period limited by statute for assessing a tax, a revenue agent began an examination of the books of the two companies, which was not completed until late in November, 1924. Early in December the collector of internal revenue informed the petitioners that additional taxes were due from them of $13,221.-42 in the case of the Panther Rubber Manufacturing Company, and $2,718.83 in the case of the Panco Rubber Company.

Later in December the comptroller and president of both companies went to the office of the collector and were referred to the internal revenue agent in charge. On arriving at the office of the agent only the comptroller went in. He explained to the agent that the books of the companies were then impounded in court during the trial of a case, but as soon as they were released, which would be in a few days, he would like to reexamine the books and check up the government's figures, and asked for an extension of ten days.

Neither the comptroller nor the president at this time knew that the statutory period for assessing a tax had expired, not having in mind the date on which their return was filed, and were therefore unaware that the government then had no right to assess an additional tax.

The agent refused to grant an extension, telling the comptroller that unless waivers were signed, handing him blanks for the purpose, the deficiency taxes would be assessed at once. Whereupon the comptroller took the forms of waiver to the president, who remained in his automobile outside, and explained the situation to him, and advised him that unless the waivers were signed the deficiencies would be assessed immediately. Acting upon this information the president signed, and the taxes were assessed.

Later the president consulted counsel, who advised the corporations in such matters, but whom he was unable to see before visiting the office of the collector and revenue agent. Counsel advised him that, the period for assessing a tax having expired, the waivers, under the circumstances under which they were obtained, were not binding. The petitioners thereupon immediately filed a protest with the collector against the assessment of the tax on the ground that the waivers were of no validity.

The deficiency taxes were assessed by the commissioner. An abatement was refused, and the corporations filed petitions with the Board of Tax Appeals to review the determination of the Commissioner. The Board of Tax Appeals held the waivers valid and sustained the Commissioner in the assessment of the deficiency taxes, relying on previous decisions of the Board. Two members of the Board, however, dissented.

The petitioners thereupon appealed to this court, and assign as errors: (1) That the waivers have no corporate seal attached; (2) that the president had no authority to sign such waivers after the statutory period for assessing the tax had expired; (3) that the waivers were void because executed after the statutory period for assessing and collecting deficiency taxes for the year 1919 had expired; (4) that they were exacted from the president under duress and a threat by the revenue agent to do something he could not legally do; (5) that the waivers were of no validity, because neither the comptroller nor the president knew at the time of signing that the statutory period for assessing and collecting any deficiency tax had expired.

We are not impressed with the first objection, nor do we think it necessary to decide the second, though we have grave doubts of the president's authority, under the by-laws of these companies, to execute such a waiver after the statutory period had expired.

We are advised by counsel that the question of whether a waiver under section 250 of the Revenue Act of 1921 (42 Stat. 264), or under section 278(c) of the Revenue Act of 1924 (26 USCA § 1060), will authorize the assessment of a tax after the statutory period within which an assessment may be made has expired, unless the waiver is signed before the expiration of the limitation period, is now before the Supreme Court on an appeal from the Court of Claims, Stange v. United States, 68 Ct. Cl. 395; and also in W. P. Brown & Sons Lumber Co. v. Commissioner (C. C. A.) 38 F.(2d) 425, and Aiken v. Commissioner (C. C. A.) 35 F.(2d) 620.

It will be noted that in the instant case the power to assess any tax after September 16, 1924, had absolutely gone. Taxing statutes, except as to exemptions, or where the power to tax is involved, are to be construed strictly against the government and liberally in favor of the taxpayer. Wiggins Ferry Co. v. East St. Louis, 107 U. S. 365, 2 S. Ct. 257, 27 L. Ed. 419; Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211; Bowers v. New York & Albany Co., 273 U. S. 346, 350, 47 S. Ct. 389, 71 L. Ed. 676; Spear v. Heiner (D. C.) 34 F.(2d) 795; United States v. Updike, 281 U. S. 489, 496, 50 S. Ct. 367, 74 L. Ed. 984.

In general, unless a statute clearly indicates to the contrary, any further extension of time for enforcing a right or preserving it should be made before the right expires. Without statutory authority, therefore, the government having after September 16, 1924, lost the right to assess any further taxes against the appellants for the year 1919, the contention is not without force that the right cannot afterward be revived by consent of the taxpayer.

Congress, by substitute provisions, in pari materia with section 250 of the Revenue Act of 1921, has indicated that such was its intent, and has made it clear in the act of 1924 and especially in the Revenue Act of 1928. In the Revenue Act of 1924, § 278(c), Congress provided that assessment and collection may be had after the expiration of the statutory period, where the taxpayer and commissioner "have consented," indicating a past act. This might not be conclusive, but Congress in the

Revenue Act of 1928 clearly indicated its intent (see chapter 852, § 276 [26 USCA § 2276]), and required the waiver to be signed before the limitation period for assessing the tax expired.

In Alexander v. Alexandria, 5 Cranch 1, 7, 3 L. Ed. 19, Chief Justice Marshall said: "Without deciding this question as depending merely on the original law, it is to be observed that acts in pari materia are to be construed together as forming one act. If in a subsequent clause of the same act provisions are introduced, which show the sense in which the legislature employed doubtful phrases previously used, that sense is to be adopted in construing those phrases. Consequently, if a subsequent act on the same subject affords complete demonstration of the legislative sense of its own language, the rule which has been stated, requiring that the subsequent should be incorporated into the foregoing act, is a direction to courts in expounding the provisions of the law."

By the Revenue Acts of 1921 and 1924 the time for assessing a tax may be extended by a waiver of the time limitation by the taxpayer, without question, if done while the government has the right to tax; but when the right to assess a tax has once expired, it should require clear authority for the taxpayer and Commissioner to restore it by waiver of a limitation of the right to tax. The doubt, if such exists, should be resolved in favor of the taxpayer. Gould v. Gould, supra.

This interpretation of the Revenue Acts of 1921 and 1924 has been adopted in the following cases: Joy Floral Co. v. Commissioner, 58 App. D. C. 277, 29 F.(2d) 865, 868; Walsh v. Price (D. C.) 34 F.(2d) 57; Pictorial Printing Co. v. Commissioner (C. C. A.) 38 F.(2d) 563; Chicago Ry. Equip. Co. v. Commissioner (C. C. A.) 39 F.(2d) 378, 379; Spear v. Heiner, supra, page 799 of 34 F.(2d).

Whatever may be the conclusion of the Supreme Court on this point, on other grounds we think the waiver relied on by the government has no validity. A waiver is the intentional relinquishment of a known right. Waiver implies knowledge and is not applicable to one who has acted without full knowledge of all the facts. The party relying on waivers assumes the burden of proof as to the knowledge of the party making the waiver. There can, of course, be no waiver where it was obtained by duress or fraud. St. Louis El. Lt. & P. Co. v. Edison Gen. El. Co. (C. C.) 64 F. 997; Hunter v. Baker Motor Vehicle Co. (D. C.) 225 F. 1006, 1013; Champion Spark Plug Co. v. Automobile Sundries Co. (C. C. A.) 273 F. 74, 79. These principles are so well settled as to require no further citation of authorities.

How do these well-established principles of the law of waiver affect this case? Neither the president nor comptroller knew at the time that the right to assess an additional tax no longer existed. Neither knew what the rights of the corporations actually were, as they did not know the date of filing their return, even if they must be presumed to know the law as to the period of limitation. There was here no intentional relinquishment of a known right, even if it could be done after the limitation period had expired.

Not only they did not know that the government had no power at that time to assess an additional tax, but they were misled by the agent, who asserted that unless the waiver was signed the Commissioner would at once proceed to assess the deficiency. It amounted to an assertion that the government still had the power to assess; that the period had not expired. Fraud may consist not only in stating a fact known to be false, intending it to be relied on, but in asserting as of one's own knowledge, especially by one who would be presumed to know, material facts, susceptible of knowledge, when the person so stating does not know whether they are true or false, but which in fact are false, even though he may believe them to be true.

A waiver by the president of these corporations, even though duly authorized, of a right or an immunity which he did not know the corporation possessed, and under a threat by an agent of the government, that unless the waiver was signed at once a deficiency tax would be assessed, cannot be upheld as a valid waiver under these statutes.

The decisions of the Board of Tax Appeals are reversed.