Moss, Judge,
delivered the opinion of the court:
This action is for the recovery by plaintiff of an admitted overpayment of its income and war-profits taxes for the taxable year 1917 in the sum of $498,961.29, with interest from the date of such overpayment. Plaintiff included in its tax return for 1917 the value of stock dividends received amounting to $2,068,000. It filed a claim for refund on February 28, 1923, alleging as a ground for the refund that the stock dividends in question should have been allocated to other years than 1917, which claim was rejected. Thereafter the United States Supreme Court decided that the value of stock dividends did not constitute taxable income, and on September 3, 1927, plaintiff filed a second claim for refund, which it designated as an amended return, and sought the refund of said sum on the ground that said stock dividends did not constitute taxable income. The Commissioner of Internal Revenue determined that the latter claim was barred by the statute of limitations, and rejected same.
We are unable to agree with plaintiff’s first contention that the second claim should be construed as an amendment to the first. As stated above, the sole ground relied upon in the first claim with reference to said stock dividends was that they should have been allocated to other years than 1917. It contained no suggestion that the value of said dividends did not constitute taxable income. Feather River Lumber Co. v. United States, decided in this court May 28, 1928 [66 C. Cls. 54]; Jonesboro Grocer Co. v. United States, decided December 3, 1928 [66 C. Cls. 320].
With reference to the second claim, it is admitted that if said claim was filed within the time required by law plaintiff should recover the sum sued for, $498,961.29; and this question, in turn, depends upon the proper determination of the question as to when a credit is allowed within the meaning of the statutes on the subject.
Section 252 of the revenue act of 1921, 42 Stat. 268, provided, with reference to crediting or refunding overpay-ments of income, war-profits, and excess-profits taxes collected under the revenue act of 1917:
“ That if, upon examination of any return of income made pursuant to this act, * * * the revenue act of 1917, or the revenue act of 1918, it appears that an amount of income, *106 war-profits, or excess-profits tax has been paid in excess of that properly due, then, notwithstanding the provisions of section 3228 of the Revised Statutes, the amount of the excess shall be credited against any income, war-profits or excess-profits taxes, or installment thereof, then due from the taxpayer under any other return, and any balance of such excess shall be immediately refunded to the taxpayer: Provided, That no such credit or refund shall be allowed or made after five years from the date when the return was due, unless before the expiration of such five years a claim therefor is filed by the taxpayer: * *
Section 284 (b) (1) of the revenue act of 1926, 44 Stat. 66, provided:
“No such credit or refund shall be allowed or made after three years from the time the tax was paid in the case of a tax imposed by this act, nor after four years from the time the tax was paid in the case of a tax imposed by any prior act, unless before the expiration of such period a claim therefor is filed by the taxpayer; * *
The payment of this tax was accomplished by the allowance of a credit against an overassessment. The claim must therefore have been filed within four years from the date on which the allowance of this credit was made. Finding XII in the agreed findings of fact sets forth the steps taken leading up to the allowance of the credit in this case.
It is the contention of the Government that the credit was allowed on February 9, 1923, when the Commissioner of Internal Revenue certified the overassessment to the collector. This contention seems to be based on the decision in the Penn Smokeless Coal Co. v. United States, in the District Court of the United States for the Western District of Pennsylvania, decided January 3, 1929. It will be noticed that the real controversy in that case was over the question as to when the credit was “ taken.” It was agreed between counsel, as shown by the briefs, that “ a credit is allowed when the Commissioner approves the schedule of overassessments for transmission to the proper accounting officer for credit.” That point was therefore not the subject of argument. Wé think counsel were in error in agreeing that such was the correct principle. At any rate, it should be noticed that the *107 court itself fell into an unfortunate error in its discussion of the case. It is stated:
“In Girard Trust Company v. United States, supra, 270 U. S. 163, the court in the opinion of Mr. Chief Justice Taft, laid down a rule as follows: A claim for refund or credit is allowed within the meaning of the statute when the commissioner approves the schedule in whole or in part for transmission to the proper accounting officer for credit or refund.’’ * * * Applying the rule laid down in Girard Trust Company v. United States to the actual procedure in the Bureau of Internal Revenue, the credit to the plaintiff was allowed when the commissioner approved the schedule of overassess-ments on January 13,1926, for transmission to the collector.” (Italics ours.)
The matter quoted above was not a rule laid down by Chief Justice Taft. It was a reference by the Chief Justice to a Treasury regulation and was cited only for the purpose of expressing his emphatic disapproval of the principle embodied therein, which he did in the following language:
“ We can not concur, however, in the view of the Treasury Department that the date of the allowance of the claim as intended by the statute is the date when the commissioner first decides that there has been an overassessment and sends upon a proper form his decision to the collector of internal revenue who made the collection and keeps the account with the taxpayer.”
Inasmuch as the decision in the Penn Smokeless Coal Co. case is based, in a large measure, upon a palpably erroneous premise it must be considered as of questionable value as a precedent in the present case.
It should be observed that the Government made the same contention, on the point under discussion, in the Girard Trust Company case. It is true that only refunds were directly involved in the Girard Trust Company case, but the court seems to have placed credits and refunds on the same footing, so far as the date of allowance is concerned. In defining what constitutes an allowance of a claim for refund or credit, the court stated:
“ The Commissioner of Internal Revenue is the final judge in the administrative branch of the Government to decide that an overassessment has been made and that a refund or credit should be granted, and when he has made that decision *108 -finally, he has allowed the claim for the refund or credit of the taxes paid within the meaning of the section.” (Italics ours.)
The Government in its brief presented that case on the theory that no difference existed between a ci'edit and a claim for refund in the matter of the date of the allowance. It is stated in said brief •
“ * * * and the date of the allowance of the claim, that is, the date of adjudication of his right to credit or refvmd, remains the date of the approval of the original schedule.”
The schedule is nothing more nor less than a statement of credits as well as refunds found by the collector to be due the taxpayers named therein. The opinion in the Girard Trust Qompaovy case, sufra, referring to the collector’s report as to the amount which should be credited on taxes due for other years, and the amount to be refunded, states (p. 171) : “ that this is examined by the assistant commissioner and then is delivered to the commissioner, who malees it effective by Ms approval.” (Our italics.)
The commissioner “ is the final judge in the administrative branch of the Government to decide * * * that a refund or credit should be granted.” No other administrative officer has such authority. The commissioner’s decision that there has been an overassessment is one thing; the determination that there has been an overpayment is quite another. This can not be determined by the commissioner until he is informed by the collector what part, if any, of the overassessment had been paid, and what part, if any, had been abated. In the case of Boston Buick Company v. United States, 27 Fed. (2d) 395, the question as to when a credit is allowed was directly involved. The Government contended there, as it has done in the instant case, that, notwithstanding the decision in the Girard Trust Company case, supra, the date of the allowance of a credit is the date on which the commissioner transmits to the collector a schedule of overassessments. The court held that “ in view of Girard Trust Company v. United States, supra, it can be taken as settled that the transmission of the schedule of overassessments does not constitute an allowance of either a credit or a refund.” (Our italics.) The court expressed the opinion that there might be some ground for differentiating *109 between a refund and a credit, and suggested that the date on which the collector enters the credit on his books might be regarded as the date of the allowance of the credit. There being no necessity in that case for a more exact determination, the court concluded the whole question by stating that “ it is sufficient to decide that the credit was not allowed on March 14, 1924, when the schedule of overassessments was forwarded to the collector at Boston.” The suggestion of the court to the effect that the date of the entry of the credit by the collector might be considered as the date of the allowance of the credit is not sound, for the particular reason that the collector has no authority to allow either refunds or credits, that authority being vested in the commissioner, and being judicial in nature, it can not be delegated to the collector.
We have reached the conclusion that the credit involved herein was allowed within the meaning of the statute when the commissioner signed the schedule of refunds and credits as reported by the collector, which was September 6, 1923, and within four years from the filing of the second claim for refund. Plaintiff is entitled to a judgment, and it is so adjudged and ordered.
SiNNOtt, Judge; GreeN, Judge; Geaham, Judge; and Booth, Ghief Justice, concur.