## PHILIPSBORN v. UNITED STATES.
### No. H-239.

Court of Claims.
Oct. 20, 1931.

Clarence N. Goodwin, of Washington, D. C., for plaintiff.

John W. Hussey, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff brings this suit to recover the sum of $2,908.48, with interest, which amount is admitted to be an overpayment of his income taxes for the year 1919.

The amount of the overpayment being conceded by the defendant, the only issue involved is the right of the plaintiff to recover the same in this proceeding.

The defendant contends plaintiff's right of action is barred by the statute of limitations because of his failure to file a timely and proper claim for refund of the amount involved.

The rule is well established by the decisions of this and other courts that compliance with the statutory requirements with reference to the filing of claims for refund is a condition precedent to the right of a taxpayer to maintain a suit for the recovery of taxes claimed to have been illegally or erroneously collected. Kings County Savings Institution v. Blair, 116 U. S. 200, 6 S. Ct. 353, 29 L. Ed. 657; Rock Island, Arkansas & Louisiana Railroad Company v. United States, 254 U. S. 141, 41 S. Ct. 55, 65 L. Ed. 188; Feather River Lumber Company v. United States, 66 Ct. Cl. 54; Hazel M. Davis v. United States, 67 Ct. Cl. 643; Swift & Co. v. United States, 38 F.(2d) 65, 68 Ct. Cl. 97.

The Revenue Act of 1924 provides as follows with reference to refund of overpayments:

"Sec. 281. (a) Where there has been an overpayment of any income, war-profits, or excess-profits tax imposed by this chapter, * * * the Revenue Act of 1918, or the Revenue Act of 1921, or any such Act as amended, the amount of such overpayment shall be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer.

"(b) Except as provided in subdivisions (c) and (e) of this section, (1) no such credit or refund shall be allowed or made after four years from the time the tax was paid, unless before the expiration of such four years a claim therefor is filed by the taxpayer. * * *" (26 USCA § 1065 note).

The Revenue Act of 1926, § 284, 26 USCA § 1065(b)(1), (g), provides:

"(b) Except as provided in subdivisions (c), (d), (e), and (g) of this section—

"(1) No such credit or refund shall be allowed or made after three years from the time the tax was paid, in the case of a tax imposed by this Act, nor after four years from the time the tax was paid in the case of a tax imposed by any prior Act, unless before the expiration of such period a claim therefor is filed by the taxpayer. * * *

"(g) * * * If the taxpayer has, on or before June 15, 1925, filed such a waiver in respect of the taxes due for the taxable year 1919, then such credit or refund relating to the taxes for the taxable year 1919 shall be allowed or made if claim therefor is filed either on or before April 1, 1926, or within four years from the time the tax was paid. * * *"

The question whether the plaintiff has filed a timely and sufficient claim for refund

hinges on the construction to be placed upon the sworn document filed with the Commissioner of Internal Revenue, June 18, 1924.

The plaintiff maintains: (1) That this sworn letter was a claim for refund fulfilling all of the essential requirements of the statutes and regulations; or (2), if such letter were not a claim complying with the statute and regulations, it was an informal claim which tolled the statute of limitations, and which was perfected by the refund claim on Form 843, filed March 9, 1926.

The plaintiff relies upon the authority of Lasher v. United States, 65 Ct. Cl. 295, where it was held a sworn letter by the attorney in fact of the taxpayer constituted a valid claim for refund, as decisive of the case at bar.

The court in its decision in the Lasher Case, page 302, of 65 Ct. Cl., referring to the sworn letter relied upon as a claim for refund said: "The error of the commissioner, claimed by plaintiff, in the computation of the tax liability of the estate of George F. Lasher, and the contentions of both plaintiff and the representatives of the Internal Revenue Bureau with respect to the particular question presented by plaintiff, were discussed at length and in minute detail. Appended to this letter was a sworn affidavit of G. H. Shryock, the duly authorized agent and attorney in fact of plaintiff, in which it was stated, 'That it is his belief, and he so avers, that Georgeine S. Lasher, the taxpayer on whose behalf this appeal is made, has paid an aggregate amount of income and surtaxes for 1917, 1918, and 1919 which exceeds the aggregate amount of her actual tax liability for those years.'"

The court held that this letter contained all the essential information required to be set out in official forms for claims for refund. It will be noted the letter asserted the taxpayer had overpaid her taxes for the years in question and stated the specific grounds upon which such claim was based.

The caption of the sworn letter relied upon as a claim for refund in the instant case reads: "In re: Return of Martin M. Philipsborn for the year 1919, and the report of Henry I. Jenks, submitted to the internal revenue agent in charge at Chicago, June 25, 1924."

At the time the letter was written an audit was being made of the plaintiff's 1919 tax return, and an agent of the bureau had made a report recommending an increase in the amount of dividends received by the plaintiff from Philipsborn, Inc., over that reported by him in original return. The letter states that the writer was an official of Philipsborn, Inc., for the year in question and was fully informed in regard to the dividends paid by the said company. It sets out in detail the dividends paid to the plaintiff, with the amounts and dates of payment. A statement is attached showing all dividends paid to members of the family, and to M. J. Stein, trustee, by Philipsborn, Inc., for the years 1919 and 1920.

No reference is made in the letter to the plaintiff's tax liability for the year 1919. It is not asserted that he had overpaid his taxes for that year, and no claim is made for a refund of any part of the taxes paid.

The letter does not meet the essential requirements of a claim for refund. It does not purport to be a claim for refund, and there is nothing in the letter itself, or in the record of the case, to indicate that the writer, at the time it was filed with the commissioner, considered it as such.

That it was not intended to be a claim for refund is indicated from the fact a power of attorney did not accompany it, as is required by article 1306 of the regulations where claim for refund is attested by an agent of the taxpayer.

We think the letter was submitted as evidence on behalf of the taxpayer and must be so construed. Its purpose was to furnish the commissioner, who was then investigating the plaintiff's return and tax liability for the year 1919, with exact information as to the dividends received by the plaintiff from Philipsborn, Inc., during the year. The plaintiff in his return had stated these dividends to be a certain amount. The agent of the bureau making an audit of the return had reported a larger amount. The commissioner accepted the figures furnished by plaintiff's agent in the sworn letter as correct and used them in determining plaintiff's tax liability for the year.

The fact that the commissioner adopted the figures furnished in the letter does not change the character of that document and does not indicate that he considered it a claim for refund. That the commissioner considered the letter as an evidential document and not as a claim for refund is shown by his letter to plaintiff, September 26, 1924, and the statement attached thereto:

"An audit of your income-tax returns for the years 1919 to 1922, inclusive, in connection with an examination of your books of

account and records has resulted in \* \* \* an overpayment of $2,908.48 for 1919. \* \* \*

"Dividends received from Philipsborn, Incorporated, Chicago, Ill., have been decreased from $54,703.15 to $33,271.86 in accordance with the information contained in a letter dated June 16, 1924."

The letter in this case is distinguishable from the documents held to be a claim for refund in the Lasher Case, supra, in that no assertion is made of an overpayment of taxes, no errors in the computation of the tax are alleged, and no language is employed that can reasonably be construed as "the assertion of a right intelligently expressed" of the plaintiff to a refund.

We do not think the letter, although sworn to, constitutes either a formal or an informal claim for refund of taxes within the requirements of the statutes and the regulations. It makes no mention of a claim for refund and uses no language which can be construed as making such claim. At the time the letter was written and filed no audit of the return had been made and neither the plaintiff nor the commissioner knew at that time whether or not a final audit would show an overpayment.

Plaintiff filed no waiver within the time prescribed; consequently the claim for refund dated March 9, 1926, was filed after the expiration of the limitations period. This claim cannot be considered as amendatory of the letter of June 16, 1924, as such letter did not constitute an informal claim for refund. This claim for refund was complete in itself and made no reference to the letter of June 16, 1924, showing conclusively that the plaintiff at the time of its filing did not consider it as an amendment to a former claim.

The plaintiff contends, however, that even in the absence of a timely claim for refund he may maintain his suit and recover the overpayment for the year 1919, as upon an account stated, and a promise to pay. It is urged that the Commissioner of Internal Revenue, on September 26, 1924, on the audit of plaintiff's tax return for 1919, determined an overassessment; that he notified the plaintiff of such action, and promised to credit or refund said overpayment; that such determination was made within the statutory period when the commissioner was empowered to allow a credit or make a refund in respect to 1919 overpayments, without the filing of a claim for refund; that such action was within the scope of his statutory authority and gives rise to a cause of action, not up-on the overpayment of the tax, but upon an account stated.

The plaintiff relies upon United States v. Kaufman, 96 U. S. 567, 571, 24 L. Ed. 792; United States v. Real Estate Savings Bank, 104 U. S. 728, 733, 26 L. Ed. 908; and Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018.

In the Kaufman Case claim for refund under section 3426, Revised Statutes (13 Stat. 294, § 161), had been filed within the time prescribed and allowed. Payment was refused by the Comptroller of the Treasury. The court said: "The foundation of the suit is the refusal of the government to pay a claim allowed by an officer authorized to repay moneys overpaid under certain circumstances, but who can only make payment through the proper disbursing agents of the treasury. The officer has done all he can do. He has made the allowance, and certified it to the Comptroller of the Treasury for payment. \* \* \* "

In United States v. Real Estate Savings Bank, supra, the court, where a similar question was involved, followed its decision in the Kaufman Case.

In each of these cases a proper claim had been filed with the commissioner within the period prescribed by law, and allowed by him, and payment refused by the disbursing officer of the Treasury Department. The court, in these cases, held that the allowance of a claim by the commissioner under the circumstances stated was "equivalent to an account stated between private parties \* \* \* and that, if not paid on proper application through the accounting officers of the Treasury Department, an action might be maintained on it in the Court of Claims, because it raised an implied promise on the part of the United States to pay. \*. \* \* "

In the Bonwit Teller Case the Commissioner of Internal Revenue first held that a "proper claim for refund had been filed," which claim he allowed but subsequently took the position that the claim was not sufficient and refused to make the refund. The Supreme Court held that the first determination that the claim was sufficient, and the allowance thereof, was within the authority of the commissioner and was supported by the facts. The Supreme Court further held that the claim for refund having been regularly allowed, but not paid, the taxpayer's action was properly brought on the theory of an account stated without regard to the two-year limitation provisions of section 3226 of

the Revised Statutes as amended (26 USCA § 156).

None of these cases is in point here. In all of them a sufficient and timely claim for refund had been filed within the time required by law, which the commissioner had allowed. In this case the commissioner did not allow an overpayment within five years after the filing of the return for 1919, nor did this plaintiff file a timely claim for refund for 1919. Whether an allowance of an overpayment by the commissioner within the period of limitation within which he might make a refund without a claim would give rise to an account stated upon which the plaintiff might sue, we need not here determine. Certainly nothing short of an allowance would constitute an account stated. It is clear in this case that the commissioner did not make such an allowance, nor did the plaintiff file a timely claim. The commissioner's letter of September 26, 1924, was not an allowance of an overpayment. It was merely a preliminary thirty-day notice of a proposed overassessment for 1919 and deficiencies for 1920, 1921, and 1922. The letter advised the plaintiff of his right to protest the amounts proposed and to submit additional evidence. Although the statement attached to this letter showing the proposed overassessment for 1919 and the deficiencies for 1920 to 1922, inclusive, far in excess of the overassessment stated that "the overassessment shown herein has been made the subject of a certificate of overassessment which will reach you in due course through the office of the collector of internal revenue for your district," the facts do not disclose that a schedule of overassessment was ever signed by the commissioner or transmitted to the collector, or that any certificate of overassessment, which issues only after the schedule of overassessment has been signed and sent to the collector, was ever issued by the commissioner.

The record in this case would indicate that it was the practice of the commissioner where there was a proposed overassessment for one year and deficiencies for other years, in order to comply with the requirements of section 281 of the Revenue Act of 1924 and section 284 of the Revenue Act of 1926 and sections 1019 of the Revenue Act of 1924 and 1116 of the Revenue Act of 1926, not to allow an overpayment until he had made a final determination with respect to the deficiencies for the other year or years. In this case he made no allowance of overpayment within the meaning of the statutes within the period of limitation within which he could do so without a claim for refund, and when he made his final decision with respect to the deficiencies for other years he found that he was precluded from allowing the refund by reason of the failure of taxpayer to file a timely claim.

The 30-day letter of September 26, 1924, was not an allowance of an overpayment by the commissioner. Girard Trust Co. v. U. S., 270 U. S. 163, 46 S. Ct. 229, 70 L. Ed. 524. It did not give rise to an account stated upon which the taxpayer might bring suit. The plaintiff did not protect his right to secure a refund for 1919 or to sue for the recovery of an overpayment for that year by the filing of a claim for refund within five years after the return was filed or by the filing of a waiver within the time prescribed by section 284 (g) of the Revenue Act of 1926. His right to bring suit for the recovery of any overpayment for 1919 is barred.

The petition must therefore be dismissed. It is so ordered.