## ANDERSON v. UNITED STATES.
### No. L—III.

Court of Claims.
May 7, 1934.

Wallick & Shorb, of Washington, D. C., for plaintiff.

Joseph H. Sheppard and Elizabeth B. Davis, both of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS and WHALEY, Judges.

WHALEY, Judge.

The Commissioner of Internal Revenue refunded to plaintiff in 1924 the income taxes paid by her for 1919 after certain deficiencies for the years 1917 and 1918 were deducted and this suit is brought to recover interest on the amount so refunded, alleging an informal claim for refund was made by the plaintiff through certain correspondence filed with the Commissioner in the years 1921 and 1923. The refund having been made before the passage of the Revenue Act of 1924 (43 Stat. 253) and that act not being retroactive, United States v. Magnolia Petroleum Co., 276 U. S. 160, 48 S. Ct. 236, 72 L. Ed. 509, section 1324 (a) of the Revenue Act of 1921 (42 Stat. 227, 316) is the applicable statute.

This statute provides:

"That upon the allowance of a claim for the refund of or credit for internal revenue taxes paid, interest shall be allowed and paid upon the total amount of such refund or credit at the rate of one-half of 1 per centum per month to the date of such allowance, as follows: (1) if such amount was paid under a specific protest setting forth in detail the basis of and reasons for such protest, from the time when such tax was paid, or (2) if such amount was not paid under protest but pursuant to an additional assessment, from the time such additional assessment was paid, or (3) if no protest was made and the tax was not paid pursuant to an additional assessment, from six months after the date of filing of such claim for refund or credit. The term 'additional assessment' as used in this section means a further assessment for a tax of the same character previously paid in part."

The plaintiff had a gift made to her in 1917 of 325 shares of Ford Motor Company stock. In 1919 she sold this stock for $12,-

500 a share. In making her 1919 income tax return she valued the stock at the time of the gift at $12,500 a share; this being the same amount as that received by her when it was sold, there was neither gain nor loss to be taken on her return of income. When this item of value of the stock for 1917 came to the attention of the Commissioner, he wrote to plaintiff on January 31, 1921, requesting data to support the value of the stock in 1917 when it was received by her as a gift. Not receiving a substantive reply to this inquiry, the Commissioner again wrote to plaintiff on April 19, 1921, requesting prompt attention to his previous letter. In reply to this letter, on April 27, 1921, plaintiff stated to the Commissioner that she had in her possession affidavits fixing the value of this stock at $12,500, $14,420, and $14,000 per share. There is no claim in this letter of any refund which the plaintiff expected, but simply an affirmation of the value, at least of the amount, placed by her on this stock for the year 1917. It appears that in 1919 a decree of court was made requiring the payment of dividends by the Ford Motor Company which resulted in the plaintiff receiving during 1919 on her 325 shares of stock, $313,225.02. Instead of including this amount in her taxable income for the year 1919, the plaintiff amended her 1917 return and included this amount in that year's income. On May 27, 1921, the Commissioner wrote to the plaintiff stating this amount, having been received in 1919, was taxable in that year and not in 1917. In this letter the Commissioner sets out an audit of her taxes for 1919 which resulted in a proposed additional assessment for the year 1919 of $192,276.48. Upon the receipt of this audit made by the Commissioner showing a proposed deficiency of $192,276.48, the plaintiff replied affirming her position that the dividend was correctly placed in the year 1917 because of the adjudication of the case in the court of the state of Michigan and expressing the desire to have the income tax unit give further consideration as to the year in which the additional dividend should be taken for tax purposes. There is no semblance of a claim for refund in this letter but simply a desire to have a final decision by the tax unit of the bureau as to the year in which the dividend should be taken. In August, 1921, the plaintiff again wrote to the Commissioner requesting a conference before any supplemental assessment was made by the Commissioner, and in this letter raised not only the question of the year in which the dividend should be included, but requested that the issue originally raised by the Commissioner as to

the value of the Ford Motor Company stock in 1917 be given consideration, and asserted: "Very conclusive evidence can be presented that the value was very much in excess of that shown by your examining officer." This is the first intimation on the part of the plaintiff that the value of this stock as fixed by her in her 1919 return, was more than the amount taken by her. On December 19, 1922, the Commissioner furnished the plaintiff an audit of her income tax returns for the years 1917, 1918, and 1919, which showed an overassessment for 1917 of $54,624.63 and additional assessments for 1918 and 1919, respectively, of $149.14 and $192,309.88, that is, a proposed net additional tax of $137,834.39. Upon receipt of this notice of additional assessment, the plaintiff on January 10, 1923, wrote to the Commissioner, in seeking a delay of payment, stating: "Permit me, however, to kindly call your attention to the fact that in my own particular case (unlike that of other stockholders) there is another issue involved affecting the amount of this 1919 tax which is not touched upon in your letter and to which I wish to draw your attention.

"It is the question of the loss sustained by me in the sale of this stock in July 1919, as compared with its fair market value when acquired by me, by gift, in January 1917."

The plaintiff requested that the 1919 income tax be audited for the purpose of having the value of the Ford stock in 1917 ascertained and furnished the Commissioner information as to its value which showed it exceeded the amount fixed by her in the 1919 return. She again asserts:

"I ask your kind consideration in regard to this item because, whereas I am taxed, as income, the amount of dividend received by me as the result of the Court decision in the Dodge-Ford suit, this has not been offset in any way by the great shrinkage in value in 1919, which was the direct result of this suit."

The Commissioner, upon an audit of the plaintiff's return, decided that the loss sustained by the plaintiff on the value of the stock when sold, more than overcame the proposed additional tax and also resulted in the plaintiff not being liable for any tax in 1919. The amount paid by her for that year was accordingly returned to her as an overpayment after certain adjustments for previous years were made. This refund of the entire tax paid by the plaintiff in 1919 was due to the loss sustained by her on the sale of the stock.

The Commissioner duly paid the plaintiff the sum of $64,352.27. On April 25, 1928, a formal claim for refund of interest on the

amount refunded was filed by the plaintiff in the sum of $9,421.85. This claim was rejected by the Commissioner because no claim for refund for any part of the tax for 1919 had been filed prior to the allowance of the overpayment.

The plaintiff contends that the letter of January 10, 1923, sworn to by the plaintiff, was sufficient compliance with the requirements of the statute to constitute an informal claim for refund to which the formal claim could be attached as an amendment.

Under the applicable provisions of section 1324 (a) of the Revenue Act of 1921, a claim for refund must be filed before interest can be allowed. The first intimation that the value of the stock received by the plaintiff as a gift in 1917 was in question, was raised by the Internal Revenue Bureau in a letter to the plaintiff. The entire correspondence with the Commissioner showed an endeavor on plaintiff's part to avoid the payment of the proposed additional assessment caused by the additional dividend received by the plaintiff being placed in the year 1919, the year in which it was received, and not in the year 1917 as insisted upon by her and in which year she had placed it in her supplemental return for that year. The plaintiff's whole object and aim were to avoid the payment of the additional tax caused by the receipt of this extra dividend. After exhausting all of the remedies provided by the bureau without success, and after the Commissioner had notified her of the additional tax for the year 1919, plaintiff then resorted to and claimed a loss on the sale of the stock and offered this alleged shrinkage in value as an offset or the equivalent of the amount of additional taxes which the Commissioner asserted was due. The evidence fails to show that at any time did the plaintiff expect to get a refund of taxes for 1919, but, on the contrary, it shows an effort on her part for a reduction or counterbalance of the proposed additional tax. There was never any assertion of a claim for refund or an intimation that, if the difference in values of the stock in 1917 and 1919 were taken into consideration, a shrinkage or loss would result in a refund to the plaintiff. This issue as to the value in 1917 was revived by plaintiff when all other efforts had failed to avoid the payment of the additional tax caused by the inclusion of the additional dividend in the 1919 return. There is nothing in any of plaintiff's letters which shows any basis on which she expected the return of any portion of the taxes paid by her on her original return for 1919. In order to constitute a claim for refund there must be brought to the attention of the Commissioner facts sufficient in themselves which, when followed by the Commissioner, would result in an excess payment by the taxpayer of taxes for the year in question. In other words, the taxpayer must take the initiative and supply facts to the Commissioner with the claim that, if these facts are taken into consideration, it will be found that the taxpayer has overpaid the amount of taxes properly due the government for the year in question.

This court in the case of Lasher v. United States, 65 Ct. Cl. 295, upheld the plaintiff's contention of an informal claim for refund but, in that case, the letter on which the claim was founded set out the facts to the Commissioner on which he acted and claimed that if the facts were taken into consideration there would be an excess payment and therefore a refund due to the plaintiff.

This was also true in the case of McKenny et al. v. United States, 49 F.(2d) 667, 52 F. (2d) 1063, 72 Ct. Cl. 195. In that case the plaintiff made an application for special assessment and stated in the application that, if it were granted, it would result in showing that the plaintiff had overpaid its tax.

The instant case is more analogous to the case of Philipsborn v. United States, 53 F. (2d) 133, 72 Ct. Cl. 545. In the latter case, as in this case, the plaintiff has attempted to amend by a formal claim for refund an alleged informal claim for refund. Without an informal claim, the formal claim is barred by the statute of limitations. We can find nothing in the record, either by inference or implication, which shows an assertion of a claim for refund of any part of plaintiff's taxes for the year 1919 to which the formal claim for refund can attach.

The petition is dismissed. It is so ordered.